84 S.W.3d 701 (2002)
In the Matter of L.R.
No. 01-00-01364-CV.
Court of Appeals of Texas, Houston (1st Dist.).
July 11, 2002.
*702 Pamela B. Williams, Houston, for Appellant.
*703 Charles A. Rosenthal, Jr., Dist. Atty., Harris County, Lori Deangelo Fix, Asst. Dist. Atty., Houston, for Appellee.
Panel consists of Chief Justice SCHNEIDER and Justices RADACK and DUGGAN.[*]

OPINION
MICHAEL H. SCHNEIDER, Chief Justice.
A jury found that appellant, a minor, engaged in the delinquent conduct of aggravated assault with a deadly weapon. The jury determined that appellant was in need of rehabilitation, assessed his punishment at five years in the Texas Youth Commission, and recommended probation. The court removed appellant from his home and placed him in the custody of the chief juvenile probation officer for placement at the Burnett Bayland Resource Center. In three points of error, appellant (1) challenges the legal and factual sufficiency of the evidence, (2) asserts that the court erred by allowing evidence of a prior bad act into evidence, and (3) claims the court erred in allowing an improper jury argument. We affirm.

Background
The complainant, also a minor,[1] alleged that appellant stopped by her house, asked to see her brother, and then pointed a gun at her head after she told him her brother was not home. Appellant admitted that he visited the complainant's house looking for her brother, but denied having a gun and denied threatening her in any way. No gun was ever recovered, and the complainant is the only witness who claimed to have seen a gun. Below, we summarize the evidence presented at trial.
The complainant, S.D., testified she was home alone after school on February 18, 2000, when appellant knocked on the front door. Although she was not a friend of appellant, S.D. recognized him from the physical education class that both attended at school. The complainant opened the door, and appellant asked for her brother. She told him that her brother was not home. Appellant then pulled out a small black handgun from his pocket, pointed it at her head, and said in a loud voice, "Go get your brother." S.D. was able to shut the door and appellant turned and walked away from the house. She immediately called her mother at work and told her what happened. While complainant was on the phone, a friend of S.D.'s from the neighborhood knocked on the door.
The friend, M.O., testified she was approaching the house to borrow some skates when she heard someone saying in a loud deep voice, "Go get your brother." She then saw appellant walking away from the house with his hands in his pockets. M.O. was afraid and returned to her house briefly before coming back to check on her friend. She found the complainant crying and looking scared. After hearing what had happened, M.O. ran back home and returned shortly with her stepfather. M.O.'s stepfather saw the complainant in a hysterical state, heard her story, and called 911. The girls then went to see S.D.'s aunt, who lived two houses away. The aunt testified that S.D. was shaking and had been crying.
Officer Tim Morducai responded to the 911 call. He described the complainant as upset and hysterical when he arrived. S.D. told the police officer that appellant *704 had pointed a gun at her and said he was going to kill her if she didn't get her brother. Officer Morducai and several other officers then detained a group of juveniles, including appellant, who were playing basketball at a house nearby. The complainant was driven by the scene and identified appellant. Appellant was searched by police, as was the surrounding area, but no gun was found.
Appellant took the stand in his own defense and testified that he and some friends had gathered for a wrestling match and to play basketball. He went to S.D.'s house because her brother had said he could borrow some cologne. He testified he did not have a gun, and, in fact, he had backed up from the door when he spoke to the complainant because a large dog was there with her.[2] He left without incident after being told that the brother was not home. While riding back to his friend's house, he saw the police arrive. When questioned by the police, appellant said he did not know anything about a gun.
On cross-examination, the State questioned appellant about his temper. He testified that he got angry only when people drove him to it, but he acknowledged that school records would show there were numerous occasions when he had been angry. Also, he agreed that someone would not be lying if he or she testified that appellant had pushed his father up against a wall in the courthouse hallway the previous day. However, he testified that he was not angry when he went to the complainant's house.
Three of appellant's friends testified. They generally corroborated appellant's account of a wrestling match and a basketball game. None of the friends said they saw appellant with a gun. One friend rode his bike down to the complainant's house with appellant, but left before the conversation with S.D. took place.
The State attempted to establish that there was some sort of a confrontation between two groups of boys the previous day at school that led to the incident, but details remained elusive. The complainant's brother was aware of an altercation involving two groups of kids on that day, but he was not a part of it and did not know if appellant was involved. Further, he testified that he had never had any problems with appellant. One of appellant's friends testified that appellant had been involved in another altercation the day before that required him to go to the principal's office, but that altercation was with a boy named D., not with the complainant's brother. The State also introduced, over objections, a school record made the day before the alleged assault outlining appellant's misbehavior in class. The State then argued in closing that appellant's motive in visiting the complainant's house was tied to a confrontation between two groups of children the previous day.

Legal and Factual Sufficiency
As his first point of error, appellant contends that the evidence was legally and factually insufficient to support the verdict. In juvenile cases, a reviewing court applies the criminal sufficiency standards of review. See In re G.A.T., 16 S.W.3d 818, 828 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). When evaluating the legal sufficiency of the evidence, we must view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. King v. State, 29 S.W.3d 556, 562 (Tex.Crim.App.2000). Our review of the factual sufficiency of the evidence *705 requires us to ask whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. Id. at 563.
We have already outlined the evidence at some length. The complainant was the only witness claiming to have seen a gun, while appellant asserted that he never had a gun. The jury, as the exclusive judge of witness credibility, was entitled to believe the complainant and not believe appellant. See Margraves v. State, 34 S.W.3d 912, 919 (Tex.Crim.App.2000). Although no gun was ever recovered, testimony that uses the term "gun," as the complainant did, is sufficient evidence on which the jury can conclude that a deadly weapon was used. Wright v. State, 591 S.W.2d 458, 459 (Tex.Crim.App.1979). The State also introduced a handgun into evidence for demonstration purposes, and the complainant testified that this handgun was similar to the one used by appellant. After reviewing the record, we conclude that the evidence was legally sufficient to support the jury's finding.
We also find that the evidence was factually sufficient. The complainant's testimony was corroborated by her friend who heard someone speaking outside complainant's house and saw appellant leaving the area with his hands in his pockets. Additionally, several witnesses testified to the complainant's hysterical state and her excited utterances, which were generally consistent with her testimony on the stand. None of appellant's witnesses was present for the conversation with the complainant. We conclude the evidence of guilt was not so obviously weak as to undermine confidence in the jury's determination and was not greatly outweighed by contrary proof.
We overrule appellant's first point of error.

Admission of School Record
In his second point of error, appellant contends the trial court erred by admitting evidence of an extraneous bad act. The court admitted a one page school record describing appellant's actions in class the day before the alleged aggravated assault. The record, which was also read to the jury, was entitled "Office Referral Form" and said,
[L] just walked in after seeing you in the office. He was extremely mad still, he was mad at the other student he got in trouble with. He slammed book hard on desk, made threats toward the other student that he was lying and he was going to hit him, he was walking towards him as he was saying this. I had to send him back to you to prevent a possible fight.
Appellant argues that the evidence had no purpose except to show that he acted in conformity with his bad character the following day, while the State contends the evidence was properly admitted to show a motive for the aggravated assault. See Tex.R. Evid. 404(b). We apply the Texas Rules of Evidence applicable to criminal cases. Tex. Fam.Code Ann. § 51.17(c) (Vernon Supp.2002). As long as the court's ruling was within the "zone of reasonable disagreement," there is no abuse of discretion and we will uphold the ruling. Santellan v. State, 939 S.W.2d 155, 169 (Tex.Crim.App.1997).
The State argues that there was an underlying conflict between two groups of boys at school, with appellant and the complainant's brother being part of different groups. This underlying conflict provided a motive for appellant to go to the complainant's house with a gun looking for her *706 brother. The State contends that the school record shows that appellant was involved in the conflict going on at school, and was, thus, admissible to show his motive. The State relies on Peden v. State for the proposition that evidence of a previous difficulty between the defendant and a third party may be admitted if it led up to the charged offense, involved the victim in any way, or tended to reveal the defendant's motive. 917 S.W.2d 941, 951 (Tex. App.-Fort Worth 1996, pet. ref'd) (citing Ingham v. State, 679 S.W.2d 503, 506 (Tex. Crim.App.1984)).
Under the State's theory, then, one would expect that the other student mentioned in the record would either be the complainant, the complainant's brother, or someone from the rival group of boys. However, as the State concedes, we do not know with whom appellant "got in trouble." Neither do we know the nature of this trouble from the school record. The only evidence further explaining the precipitating incident mentioned in the record came from one of appellant's friends who testified that appellant was called to the principal's office over an altercation with a boy named D. The jury could infer that the other student mentioned in the record was D., but D. was never tied to any rival group or to the complainant's brother. In fact, no evidence suggested that appellant and the complainant's brother were members of rival groups, and the complainant's brother testified that he never had any problems with appellant.
The State's authority does not apply to our facts. Peden involved prior quarreling between the defendant and the victim of the crime. See Peden, 917 S.W.2d at 951. The facts in Ingham, where evidence of previous altercations with a known third person were admitted to show the defendant's state of mind during the murder of another, are also not analogous. There, the victim was killed while the defendant was looking for the third person involved in the prior altercations. Ingham, 679 S.W.2d at 505-507. As we have already noted, the third party here was unidentified in the school record, and the only other relevant testimony indicated that the person was not the complainant or her brother. The school record showed that appellant had been in trouble at school the previous day and had threatened another person. This evidence does not help to explain why appellant would point a gun at the complainant beyond demonstrating that appellant had a propensity to be angry and make threats. This is the type of character conformity evidence that Rule 404(b) prohibits. Cf. Zuliani v. State, 903 S.W.2d 812, 827 (Tex. App.-Austin 1995, pet. ref'd) (holding evidence did not show motive and was inadmissible where extraneous act was against unrelated third party). The trial court abused its discretion when it admitted this evidence.
Harm Analysis
Having found error, we must now assess whether the error was harmful. See Tex. R.App. P. 44. The Texas Supreme Court has stated that juvenile proceedings are quasi-criminal in nature, but has not decided whether criminal rules for harm analysis should be applied on appeal. In re D.I.B., 988 S.W.2d 753, 756 (Tex.1999) (applying civil harm analysis standard when State's use of that standard was not challenged). The court did note, however, that "on appeal our civil rules of appellate procedure govern as far as practicable." Id.
Here, the State has cited the criminal harm analysis standard in its brief, and appellant has not suggested a standard. Appellant was sentenced under determinate sentencing whereby he was subject to the possibility of a twenty-year sentence *707 and transfer to state prison when he reached adulthood. See Tex. Fam.Code Ann. § 54.04(d)(3) (Vernon Supp.2002); In re D.V., 955 S.W.2d 379, 380 n. 1 (Tex. App.-San Antonio 1997, no pet.) (describing determinate sentencing); In re D.Z., 869 S.W.2d 561, 566 (Tex.App.-Corpus Christi 1993, writ. denied) (same). Given the quasi-criminal nature of the proceedings and the possibility of a prison sentence that extends into adulthood, we hold it is not practicable to apply the civil harm analysis standard in juvenile cases with determinate sentencing. We agree with the State that a criminal harm analysis should be applied in this situation. See D.V., 955 S.W.2d at 380 (applying criminal harm analysis in determinate sentencing case); In re K.W.G., 953 S.W.2d 483, 488 (Tex.App.-Texarkana 1997, pet. denied) (same); D.Z., 869 S.W.2d at 565-66 (same). We expressly do not decide what harm analysis is appropriate in a case where non-determinate sentencing is involved. See Tex. Hum. Res.Code Ann. § 61.084(e) (Vernon 2002) (requiring discharge from custody at age 21 in non-determinate cases).
Under the criminal harm analysis standard, non-constitutional error must be disregarded if it does not affect substantial rights. Tex.R.App. P. 44.2(b). A "substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." King v. State, 953 S.W.2d 266, 271 (Tex.Crim.App.1997). Thus, we must decide whether the error had a substantial or injurious effect on the jury's verdict. Morales v. State, 32 S.W.3d 862, 867 (Tex. Crim.App.2000). The very process of reaching this decision is the performance of a Rule 44.2(b) harm analysis. Id.
We examine the record as a whole when conducting a harm analysis. Id. We should not overturn a conviction for non-constitutional error if we have fair assurance that the error did not influence the jury, or had but a slight effect. Id.; Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim.App.1998).
The State now argues that because the school record was "vague" and "simply said that Appellant threatened to hit another student, the influence this record had was not substantial or injurious." This is a fairer description of the evidence than the State's prior assertion when arguing for its admissibility that the evidence was "highly probative" to show motive. Certainly, the evidence was vague in showing the State's theory of motive, but it demonstrated that appellant was capable of being angry and threatening others. Whether this affected appellant's substantial rights is the question before us.
We can consider the presence of other extraneous offense evidence that reflected poorly on appellant's character when analyzing the harm caused by properly preserved error. Cf. Magee v. State, 994 S.W.2d 878, 889 (Tex.App.-Waco 1999, pet. ref'd) (applying similar analysis to Rule 403 error). The record indicates that, before the office referral form was admitted, there was already evidence before the jury that showed appellant's angry and violent character. Appellant testified that he would hit people back when angry, and had agreed that school records would show there were many times when he had been angry. Testimony by appellant's friend indicated that appellant had been involved in an altercation that required him to go to the principal's office. The one-page exhibit helped substantiate this earlier testimony, but it was not key evidence demonstrating appellant's temper problems. Also, totally apart from his actions at school, appellant essentially agreed that he had recently pushed his father up against a wall at the courthouse.
*708 All this character evidence was either presented without objection at trial or, if objected to below, was not asserted as error on appeal. While the admission of this school record likely had cumulative effect on the jury, we conclude that the effect was slight and does not warrant reversal.
We overrule appellant's second point of error.

Improper Jury Argument
In his third point of error, appellant complains about the State's closing argument where the prosecutor made general statements regarding the problem of children having access to guns. At trial, appellant objected, and the prosecutor responded that the statement was a plea for law enforcement. The trial court did not rule, and the prosecutor continued with her argument.
Because no ruling was made, nothing has been preserved for our review. See Tex.R.App. P. 33.1(a)(2); Cockrell v. State, 933 S.W.2d 73, 89 (Tex.Crim.App. 1996) ("[A] defendant's failure to pursue to an adverse ruling his objection to a jury argument forfeits his right to complain about the argument on appeal.").
We overrule appellant's third point of error.
We affirm the judgment of the trial court.
NOTES
[*] The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.
[1] The complainant and appellant were both twelve years old at the time of the incident.
[2] The complainant acknowledged having two large dogs.