**AFFIRMED and Opinion Filed October 30, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-19-00160-CV

### IN THE INTEREST OF L.L., A CHILD

**On Appeal from the 304th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. JD-18-00890-W**

# MEMORANDUM OPINION

Before Justices Myers, Osborne, and Nowell
Opinion by Justice Osborne

L.L., a child between the ages of 10 and 17, entered a plea of true to a charge of criminal mischief under Texas Penal Code section 28.03, and the trial court declared L.L. to be a child engaged in delinquent conduct under section 51.03 of the juvenile justice code.[1] After a disposition hearing, the trial court ordered L.L. and her mother to pay restitution fees of $3,061.91 as a result of L.L.'s criminal mischief. In two issues, L.L. challenges the trial court's judgment of disposition. We affirm the trial court's judgment.

### BACKGROUND

L.L. and Enohelia Bustos were involved in a traffic accident. After the collision, L.L. got out of her car and caused further damage to Enohelia's[2] vehicle. The Dallas County District

---

[1] *See* TEX. FAM. CODE §§ 51.01–61.107 (Juvenile Justice Code).

[2] For clarity we refer to Enohelia and her husband Reuben by their first names.

Attorney's Office, counsel for the State of Texas, filed a "Petition Regarding Child Engaged in Delinquent Conduct" against L.L. An Associate Judge made findings and recommendations including restitution in the amount of $3,061.91 for damages to the car resulting from the vandalism. The case proceeded to a bench trial.

L.L. entered a plea of true to the criminal mischief charge, and the trial court heard evidence on the disputed issue of restitution. Enohelia's husband Reuben and L.L. testified. Reuben explained that he obtained estimates for repair of Enohelia's car, requesting separate figures for the damage caused by the collision itself and the damage caused by L.L. after the collision. He testified that he obtained several estimates and receipts and submitted them to the victim services department in connection with the case. He explained that although Enohelia had originally sought $7,906 in restitution, she was now seeking $3,061.91 as a result of L.L.'s vandalism, having separated and subtracted the damages from the collision. He testified:

> Q. Okay. If you could just kind of tell the Court what was damaged in the vandalism only. Not the car accident, but what happened in the vandalism only to the vehicle?
>
> A. Okay. The vehicle, the driver's side mirror got broken. They tried to—they pulled the—
>
> MS. JACOBSON: Objection. Your Honor, I'm not sure he has personal knowledge about which is the vandalism versus—
>
> . . . —the crash.
>
> . . .
>
> THE COURT: Hold on. Go ahead. Your response.
>
> Q (By Ms. Valdez) You—when the crash happened you responded straight to the scene immediately where your wife was?
>
> A. That's correct. I got there, like, 10 minutes after 'cause I work close by the accident.
>
> THE COURT: I'm going to overrule the objection.
>
> . . .

Q (By Ms. Valdez) So what was damaged as part of the vandalism?

A. The damage is the driver side mirror, the back—the wiper for the rear, they ripped it off. They broke it. The frame of the license plate, they broke it. They kicked all over the car, and I got pictures of that. They made a lot of dents on the paint. That's why the price was pretty high because all the work that they had to do on the car from the kicks.

Q. And the mirror alone, the driver's side mirror alone that was ripped out was about $900 just by itself?

A. Correct.

. . .

Q. Okay. So you went with obviously the—

A. The cheapest [estimate].

Q. That was the cheaper. Okay. So this amount, the $3,063.91 [sic] is what you're asking for the Court to order today; is that correct?

A. Correct.

Q. And that's how much you've paid out of pocket?

A. Correct.

Q. Y'all did have insurance, but you had liability only; is that correct?

A. Correct.

Reuben also confirmed that he was familiar with the condition of the car prior to the accident. But on cross-examination, he conceded that he did not witness L.L.'s conduct that damaged the car:

Q. Right. But would you know what—what the car looked like immediately after the accident occurred?

MS. VALDEZ: Before they started kicking it and causing all the damage.

A. When I got there everything had already—they had already done everything.

On redirect, Reuben confirmed that from each shop he contacted, he obtained a separate estimate for the vandalism and a different estimate for the damages from the collision. He also confirmed that although one shop eventually did all of the work, the amount of restitution requested did not include amounts for repair work attributable to the collision itself.

L.L. testified that she damaged only a side view mirror and a window wiper, and that her plea of true was based on an estimate of $416 as the restitution amount. On cross-examination she denied that she or her sister, who was also at the scene of the collision, kicked the car.

The trial court made rulings on the record that were incorporated in its final judgment. Among other orders, the court required L.L. and her mother to make monthly payments to Dallas County in the amount of $612.38 for a total of $3,061.91 in restitution fees. L.L. now appeals, alleging in two issues that (1) Reuben's testimony should have been excluded because he lacked personal knowledge, and (2) the trial court's findings of the restitution amount were supported by no evidence or insufficient evidence.

### STANDARDS OF REVIEW

An award of restitution in a juvenile case is reviewed under an abuse of discretion standard. *In re E.K.*, 241 S.W.3d 725, 726 (Tex. App.—Dallas 2007, no pet.). Under an abuse of discretion standard, legal and factual sufficiency are not independent grounds of error but are factors to be considered in determining whether the trial court abused its discretion. *Id.* A trial court abuses its discretion when it acts arbitrarily, unreasonably, without regard to guiding principles of law, or without supporting evidence. *Id.* In a juvenile case, the trial court possesses broad discretion to determine a suitable disposition of a child who has been adjudicated to have engaged in delinquent conduct. *In re J.C.R.S.*, 393 S.W.3d 903, 914 (Tex. App.—El Paso 2012, no pet.).

The Texas Rules of Evidence applicable to criminal cases apply to proceedings under the juvenile justice code. TEX. FAM. CODE § 51.17(c); *In re L.R.*, 84 S.W.3d 701, 705 (Tex. App.—Houston [1st Dist.] 2002, no pet.). We review a trial court's decision to admit or exclude evidence in a proceeding under the juvenile justice code for abuse of discretion. *See In re L.R.*, 84 S.W.3d at 705. As long as the court's ruling was within the "zone of reasonable disagreement," there is no abuse of discretion and we will uphold the ruling. *Id.*

–4–

## DISCUSSION

In her first issue, L.L. contends that Reuben's testimony was inadmissible because he lacked personal knowledge of the damage caused by L.L.'s vandalism. In her second issue, she contends that because Reuben's testimony was inadmissible, there was insufficient evidence to support the trial court's restitution award. We discuss the issues together.

Reuben testified that he obtained the repair estimates. He also testified that he was familiar with the condition of the car before the accident. He testified that the estimates were high because of the dents and damage to the paint "from the kicks."[3] L.L. denied kicking the car. She admitted that she "pulled off the driver's side mirror" and "tore off the windshield wiper blade" in the rear, but denied causing any other damage to the car or its paint. The trial court could have considered Reuben's testimony that dents and damage to the paint were "all over the car" after the accident but not before. And having obtained the estimates himself, Reuben had personal knowledge of the amounts charged to repair the specific damage identified.

The trial court was the sole judge of the witnesses' credibility, and was required to resolve conflicts and contradictions in the evidence. *Matter of S.J.*, 940 S.W.2d 332, 336–37 (Tex. App.—San Antonio 1997, no writ) ("In juvenile cases, the trier of fact is the sole judge of the credibility of witnesses and the weight to be afforded their testimony, and it is for the trier of fact to resolve conflicts and contractions in the evidence."). We conclude that the trial court's ruling admitting Reuben's testimony was within the "zone of reasonable disagreement," and consequently within the trial court's discretion. *See In re L.R.*, 84 S.W.3d at 705. We decide L.L.'s first issue against her.

---

[3] Although the trial court took judicial notice of the victim service report attaching the estimates Reuben obtained, L.L. correctly argues that a court may not take judicial notice of the truth of a disputed fact contained in its file. *See Gruber v. CACV of Colo., LLC*, No. 05-07-00379-CV, 2008 WL 867459, at *2 (Tex. App.—Dallas Apr. 2, 2008, no pet.) (mem. op.) (court may take judicial notice of contents of its file, but "the court taking judicial notice of the contents of its file does not elevate those averments into proof"). But the trial court could consider Reuben's undisputed testimony that he obtained the estimates that were contained in the court's file.

We also conclude that the evidence was sufficient to support the trial court's restitution award. The amount of restitution in a juvenile delinquency proceeding "must be supported by a factual basis within the record." *In re S.G.*, No. 05-05-00606-CV, 2006 WL 853178, at *1 (Tex. App.—Dallas Apr. 4, 2006, no pet.) (mem. op.); *see also* TEX. FAM. CODE § 54.041(c) (restitution remedy is cumulative but victim may not receive more than actual damages). Reuben testified about the estimates he obtained and the amounts he paid for the repair of the car. L.L. relies on her own testimony the she had seen an estimate of the damage attributable to her conduct, and the proper amount of restitution was $416.[4] She also relies on her denial that she kicked the car, and argues that because Reuben did not see her kick the car, there was no evidence to controvert her testimony. But as we have noted, the trial court was free to disbelieve L.L.'s testimony. *See Matter of S.J.*, 940 S.W.2d at 336–37; *see also Allman v. Butcher*, 314 S.W.3d 671, 676 (Tex. App.—Dallas 2010, no pet.) ("When presented with conflicting evidence, the trier of fact may believe one witness and disbelieve others."). Reuben's testimony provided a "factual basis within the record" to support the trial court's restitution award. *See In re S.G.*, 2006 WL 853178, at *1. We decide L.L.'s second issue against her.

## CONCLUSION

We affirm the trial court's judgment.

/Leslie Osborne/
_____
LESLIE OSBORNE
JUSTICE

190160F.P05

---

[4] L.L. testified that her estimate was based on "the paperwork" showing the charges the Bustoses paid to repair the side mirror and the rear windshield wiper.

–6–



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

IN THE INTEREST OF L.L., A CHILD,

No. 05-19-00160-CV

On Appeal from the 304th Judicial District Court, Dallas County, Texas
Trial Court Cause No. JD-18-00890-W.
Opinion delivered by Justice Osborne;
Justices Myers and Nowell, participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered October 30, 2019