**In The Matter of G.A.T.**

**No. 14–99–00252–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

March 30, 2000.

Rehearing Overruled May 18, 2000.

---

William B. Connolly, Houston, for appellant.

Dan McCrory, Houston, for appellee.

Panel consists of Justices ANDERSON, FROST, and HUTSON–DUNN.*

* Senior Justice D. Camille Hutson–Dunn sitting by assignment.

## O P I N I O N

HUTSON–DUNN, Justice (Assigned).

The State filed a petition alleging that G.A.T., a juvenile, had engaged in delinquent conduct by committing the offense of aggravated robbery. *See* Tex. Pen.Code Ann. §§ 29.03 (Vernon 1994). The jury found appellant delinquent and the trial court committed him to the Texas Youth Commission for six years with a possible transfer to the Institutional Division of the Texas Department of Criminal Justice. Appellant asserts the following four points of error: (1) the trial court never obtained jurisdiction to adjudicate appellant under the determinate sentencing provisions of the Texas Family Code; (2) the identification of appellant was illegally obtained and used in violation of the Texas Family Code, Texas Code of Criminal Procedure, and the Texas and United States Constitutions; (3) the evidence is legally insufficient; and (4) the evidence is factually insufficient.

## BACKGROUND

The complainant, Benito Castro, was walking home from a bar one evening when two youths, later identified as appellant and L.L., approached him. L.L. asked Castro for a quarter. When Castro reached into his pocket to retrieve a quarter, L.L. pulled out a knife and waved it in front of Castro. When Castro attempted to back up, two other individuals approached and threw Castro to the ground. All four individuals then began to hit and kick Castro. The assailants put their hands in Castro's pockets and took a $100 lottery ticket for the World Series.

Delores Torres witnessed the robbery from the porch of a nearby home. Torres saw a group of small boys, one of whom she later identified as appellant, kicking and hitting Castro. Torres testified that she had seen appellant and his companions in the neighborhood on several prior occasions. According to Torres, the area in which the beating took place was well lit

and she clearly saw the individuals involved in the attack. Right after the offense occurred, Torres flagged down Officer Richard Cano and provided him with a description of the attackers and indicated the direction in which they had fled.

Officer Cano saw four males who matched Torres' description about four blocks in the direction indicated by Torres. He detained the group, which consisted of appellant, L.L., and two other juveniles. Officer Cano then found a knife on the ground several feet from L.L. Cano and the suspects returned to the scene of the offense. At that time, approximately ten or fifteen minutes had passed since the offense occurred. Both Torres and Castro identified the juveniles as participants in the robbery.

L.L., who pled guilty to the robbery, testified that appellant participated in the robbery with him.

## POINT OF ERROR ONE

By point of error one, appellant contends that the trial court never obtained jurisdiction to adjudicate him under the determinate sentencing provisions of the Texas Family Code because he was not served with a summons on the determinate petition. *See* Tex. Fam.Code Ann. § 53.06(a)(1) (Vernon 1996). The State filed its original petition on October 14, 1998, and appellant was served with a summons and a copy of the petition on October 19, 1998. The State filed an amended determinate petition on November 1, 1998. Because appellant's parents could not be located, the State served the amended petition on appellant's grandmother. Nothing in the record indicates that the State ever personally served appellant with a summons for the amended petition, even though he was in custody.

 The State properly served appellant with a summons, and the trial court acquired jurisdiction over him at that time. *See Matter of S.D.W.,* 811 S.W.2d 739, 746 (Tex.App.-Houston [1 st Dist.] 1991, no

writ.); *B.R.D. v. State,* 575 S.W.2d 126, 130 (Tex.Civ.App.-Corpus Christi 1978, writ ref'd n.r.e.). A copy of the petition accompanied the summons as required by § 53.06(b) of the Texas Family Code. When jurisdiction attaches by virtue of a properly served original petition, the court does not lose jurisdiction because the State may have failed to serve appellant with an amended petition. *See McBride v. State,* 655 S.W.2d 280 (Tex.App.-Houston [14th Dist.] 1983, no writ); *B.R.D.,* 575 S.W.2d at 130. While certain aspects of juvenile delinquency adjudication proceedings are criminal in nature, the proceedings are primarily civil in nature. *See* Tex. Fam. Code Ann. § 51.17 (Vernon 1996); *Matter of G.M.P.,* 909 S.W.2d 198, 201 (Tex.App.-Houston [14th Dist.] 1995, no writ). Therefore, we follow the ruling in *Carrillo v. State* that the strict prohibition against amendment of pleadings in criminal cases is not applicable in juvenile proceedings. *See Carrillo v. State,* 480 S.W.2d 612, 615 (Tex.1972). However, the State may only amend its petition at "such time, and under such circumstances, as to be basically fair to the minor." *Id.; R.X.F. v. State,* 921 S.W.2d 888, 893 (Tex.App.-Waco 1996, no writ). Otherwise, there is a denial of due process. *See id.*

Appellant contends that § 53.06 of the Texas Family Code required the court to direct a second summons to him when the State amended its original petition.[1] However, none of the provisions relating to the filing of a petition or the issuance and service of a summons expressly require the court to direct a summons to a juvenile when the original petition is amended. *See R.X.F.,* 921 S.W.2d at 893; *see also B.R.D.,* 575 S.W.2d at 130.[2] As such, we cannot infer that the legislature intended such a requirement. *See R.X.F.,* 921 S.W.2d at 893. Rather, whether the juvenile received a copy of an amended petition is a relevant consideration in evaluating the "basically fair to the minor" requirement. *See id.* at 894; *B.R.D.,* 575 S.W.2d at 130.

■ In analyzing whether the lack of service on the child of the amended petition amounted to a denial of due process, it is helpful to compare the two petitions. The original petition provided two alternate ways of proving the charged offense of aggravated robbery: (1) by charging appellant with exhibiting a deadly weapon while in the course of committing robbery, and (2) by charging him with causing serious bodily injury to the complainant while

1. § 53.06. Summons
(a) The juvenile court shall direct issuance of a summons to:
(1) the child named in the petition;
(2) the child's parent, guardian, or custodian;
(3) the child's guardian ad litem; and
(4) any other person who appears to the court to be a proper or necessary party to the proceeding.
(b) The summons must require the persons served to appear before the court at the time set to answer the allegations of the petition. A copy of the petition must accompany the summons.
(c) The court may endorse on the summons an order directing the person having the physical custody or control of the child to bring the child to the hearing. A person who violates an order entered under this subsection may be proceeded against under Section 53.08 or 54.07 of this code.
(d) If it appears from an affidavit filed or from sworn testimony before the court that

immediate detention of the child is warranted under Section 53.02(b) of this code, the court may endorse on the summons an order that a law-enforcement officer shall serve the summons and shall immediately take the child into custody and bring him before the court.
(e) A party, other than the child, may waive service of summons by written stipulation or by voluntary appearance at the hearing.

2. *B.R.D. v. State* held that even though § 53.06 of the Texas Family Code requires service on the parents, nothing in the Family Code or the Texas Rules of Civil Procedure requires parents to be served with an amended petition. Based on the facts of the case, the court held that the State's failure to serve parents with an amended petition did not violate either the juvenile's or the parents' due process rights. The original summons accompanied by the original petition was sufficient to confer jurisdiction. *See B.R.D.,* 575 S.W.2d at 129–30.

in the course of committing robbery. *See* Tex. Pen.Code Ann. §§ 29.03(a)(1), (a)(2) (Vernon 1994). The amended petition abandoned the theory based on serious bodily injury and charged appellant only with aggravated robbery based on the exhibition of a deadly weapon. The amended petition was then approved by a grand jury so that the State could proceed under determinate sentencing guidelines.

First, we need to consider whether the deletion of one of the charging paragraphs violated appellant's due process rights. The deletion of an alternate means of committing a charged offense is an "abandonment," not an "amendment" of the charging instrument. *See Eastep v. State*, 941 S.W.2d 130, 133 (Tex.Crim.App.1997). When a statute provides multiple means for the commission of an offense and those means are subject to the same punishment, the State may plead them conjunctively. *See id.* However, the State is required to prove only one of the alleged means in order to support the conviction. *See id.* (citing *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex.Crim.App.1991)). Therefore, the State may abandon one or more of the alleged means. *See Eastep*, 941 S.W.2d at 133. The abandonment of an alternate means does not change the alleged offense, it merely limits the State to the remaining means. *See id.* Because appellant was already on notice of all of the alleged means of committing the offense, the deletion of one did not affect his notice or his ability to prepare his defense. *See id.* Thus, appellant's due process rights were not violated when the State abandoned one of two alternate ways of proving the charged offense.

■ Next, we must consider whether appellant's due process rights were violated when he did not receive a copy of the petition after the grand jury approved the petition for determinate sentencing. The steps for initiating proceedings under the determinate sentencing statute are:

(1) A delinquency petition is filed in the juvenile court.[3]

(2) Ordinary Family Code standards for such a petition[4] and the requirements of notice must be observed.[5]

(3) The delinquency petition must allege at least one of the covered offenses.[6]

(4) The prosecuting attorney in the juvenile court decides whether to pursue the case as an ordinary delinquency case or to invoke the determinate sentencing statute.

(5) If the prosecutor decides to invoke the statute, he does so by presenting the delinquency petition "to the grand jury of the county in which the court in which the petition is filed presides."[7]

(6) If the grand jury votes to approve the petition, the fact of the approval is certified to the juvenile court, and the certification is entered in the record of the case.[8]

(7) Once the certification is received and filed by the juvenile court, the determinate sentencing proceedings have been initiated.[9]

*See* Robert O. Dawson, *The Third Justice System: The New Juvenile–Criminal System of Determinate Sentencing for the Youthful Violent Offender in Texas*, 19 St. Mary's L.J. 943, 985–88 (1988). Nothing in this procedure would require appellant to be personally served with another petition outlining the State's decision to invoke determinate sentencing proceedings. The State makes the choice to seek determinate sentencing only after it has already complied with the notice requirements as outlined in the Family Code. *See id.* Thus,

---

**3.** *See* Tex. Fam.Code Ann. §§ 53.04(a) (Vernon 1996), 53.045(a) (Vernon Supp.2000).

**4.** *See id.* § 53.04(d) (Vernon 1996).

**5.** *See id.* §§ 53.06, .07.

**6.** *See id.* § 53.045(a) (Vernon Supp.2000).

**7.** *Id.*

**8.** *See id.* § 53.045(d)

**9.** *See id.*

had the State sought grand jury approval on the original petition, appellant would have been entitled to no greater notice than he received here.

Further, appellant does not argue that he was in any way surprised when the case proceeded under the determinate sentencing provisions. The State complied with the guidelines of the Texas Family Code by filing the approval of the grand jury with the juvenile court and entering it in the record of the case. *See* TEX. FAM.CODE ANN. § 53.045(d) (Vernon Supp.2000). Appellant's grandmother received a copy of the amended petition, including a statement evidencing the grand jury's approval. When the trial judge inquired at the commencement of the trial whether the lawyers were proceeding on the amended petition, defense counsel uttered no objections. Due process was satisfied when appellant was put on fair notice that he was being charged with delinquent conduct, i.e., aggravated robbery, and that his liberty was at stake. The fact that appellant did not receive personal notice that the State sought a determinate sentence does not violate appellant's due process rights. *See Matter of S.B.C.*, 805 S.W.2d 1, 7 (Tex.App.-Tyler 1991, pet. denied).

Because appellant was properly served with a summons containing the original petition, the trial court acquired jurisdiction over him at that time. The State's failure to serve appellant with the amended petition did not violate his due process rights and did not deprive the trial court of jurisdiction to impose determinate sentencing. Point of error one is overruled.

## POINT OF ERROR TWO

In his second point of error, appellant asserts that the identification of respondent was illegally obtained and used in violation of the Texas Family Code, Texas Code of Criminal Procedure, and the Texas and United States Constitutions. Appellant cites three instances of conduct which he claims render the identification

evidence inadmissible. We will address each of these points separately.

### Section 52.02 of the Texas Family Code

 First, appellant contends that the testimony of Castro's and Torres' out-of-court identification of him was tainted and inadmissible because Officer Cano did not comply with § 52.02 of the Texas Family Code. Section 52.02(a) provides that an officer taking a child into custody must take the child to a designated juvenile processing office without unnecessary delay. *See* TEX. FAM.CODE ANN. § 52.02(a) (Vernon Supp.2000). The record shows that after taking the four juveniles into custody, Officer Cano took them back to the scene of the crime for identification rather than taking them directly to a designated juvenile processing office. An officer detaining a juvenile must comply with each of the provisions of the Family Code, including § 52.02. *See Anthony v. State*, 954 S.W.2d 132, 134–5 (Tex.App.-San Antonio 1997, no pet.) (citing *Comer v. State*, 776 S.W.2d 191, 196 (Tex.Crim.App.1989)). Violation of this statute renders illegally obtained evidence inadmissible. *See id.* Therefore, an out-of-court identification may be suppressed when the State does not comply with the mandatory provisions of § 52.02. *See Rodriguez v. State*, 975 S.W.2d 667, 682 (Tex.App.-Texarkana 1998, pet. ref'd).

 However, in the instant case, we need not examine whether Officer Cano's detour to the crime scene amounted to an unnecessary delay. Appellant did not object at trial to the testimony concerning the out-of-court identification. A defendant must make a timely objection in order to preserve error in the admission of evidence. *See* TEX.R.APP. P. 33.1; *Lagrone v. State*, 942 S.W.2d 602, 618 (Tex.Crim. App.1997). Following this procedure allows the trial court an opportunity to rule on the objectionable matter and affords opposing counsel an opportunity to remove the objection or supply other testimony.

*See Maynard v. State,* 685 S.W.2d 60, 65 (Tex.Crim.App.1985); *Gains v. State,* 966 S.W.2d 838, 842 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd). By failing to object to such testimony at trial, appellant waived any error with regard to the out-of-court identification procedures. *See Perry v. State,* 703 S.W.2d 668, 671 (Tex.Crim.App. 1986); *Rodriguez,* 975 S.W.2d at 673.

Appellant cites to *In re C.O.S.* for the proposition that no objection was necessary because taking the juvenile to a juvenile processing center was a statutory directive. *See In re C.O.S.,* 988 S.W.2d 760 (Tex.1999). *In re C.O.S.* holds that there are three categories of rights and requirements used in determining whether error may be raised for the first time on appeal. *See id.* at 765–67. The first set of rights are those that are considered so fundamental that implementation of these requirements is not optional and cannot, therefore, be waived or forfeited by the parties. *See id.* at 765; *Marin v. State,* 851 S.W.2d 275, 279 (Tex.Crim.App.1993). The second category of rights are those that must be implemented by the system unless expressly waived. *See In re C.O.S.,* 988 S.W.2d at 766; *Marin v. State,* 851 S.W.2d at 278–79. The third set of rights are those that the trial court has no duty to enforce unless requested. *See In re C.O.S.,* 988 S.W.2d at 765; *Marin v. State,* 851 S.W.2d at 279. The law of procedural default applies to this last category. *See In re C.O.S.,* 988 S.W.2d at 767 (*quoting Marin v. State,* 851 S.W.2d at 279). Thus, the litigant's failure to speak waives these forfeitable rights.

Appellant claims that his right to object to the out-of-court identification testimony falls into the second category. This second category includes rights or requirements embodied in a statute that directs a trial court in a specific manner.

*See id.* at 766. Because § 52.02 of the Texas Family Code is a statute, appellant argues that his rights to object to testimony elicited as a result of the violation of the statute could not be waived by mere inaction. However, § 52.02 directs the arresting officers, *not the trial court,* to act in a particular manner. Thus, appellant's inaction did not waive his right to be taken to a juvenile processing office, but the same does not hold true for his right to suppress an improper identification procedure. Texas courts have consistently held that failure to object to testimony regarding an improper identification procedure waives the error. *See Rodriguez,* 975 S.W.2d at 673. Even though the identification procedure in the instant case may have been tainted by the officer's disregard for the requirements of § 52.02, it is still appellant's burden to raise the issue in court.[10] *See id.* at 682. Holding otherwise would only lead to the absurd result of forcing the trial judge to examine the procedural background of the case and then *sua sponte* suppress identification evidence. Such is not the role of the trial judge. Appellant did not file a motion to suppress and did not object to the testimony at trial. Because the trial court has no independent duty in this regard, its failure to suppress identification evidence is not error about which complaint may be made for the first time on appeal. *See* TEX. R.APP. P. 33.1; *Marin,* 851 S.W.2d at 278.

Even assuming, *arguendo,* that the trial court committed error and that error was preserved, we believe that any such error was harmless. Both Castro and Torres made in-court identifications of appellant, thus making harmless any testimony concerning the out-of-court identification. *See Townsend v. State,* 853 S.W.2d 718, 720 (Tex.App.-Houston [1st Dist.] 1993, no pet.).

---

10. In reviewing a claim for ineffective assistance of counsel, the *Rodriguez* court stated that defense counsel should have moved to suppress, and should have objected to, an out-of-court identification when the arresting officer did not comply with § 52.02 of the Family Code. *See Rodriguez,* 975 S.W.2d at 682. The *Rodriguez* court also held that failure to object to out-of-court identification procedures waives error. *See id.* at 673.

### Showup Identification Procedures

Next, appellant complains that the trial court erroneously allowed the witnesses to identify appellant before the jury because the in-court identification had been tainted by an impermissibly suggestive pretrial identification procedure. After Officer Cano apprehended appellant along with the other three suspects, he returned them to the scene of the offense for identification. Appellant now asserts that the witnesses' in-court identification was tainted by the suggestive manner of the showup procedure, and that this procedure violated the Fourth, Fifth, and Sixth Amendments of the United States Constitution as well as Article 1 of the Texas Constitution.

Once again, appellant has waived this contention because he did not raise it in the trial court. See TEX.R.APP. P. 33.1(a). Appellant never moved to exclude Castro's and Torres' identification of him based on the showup identification procedure. Texas courts stringently apply the contemporaneous objection rule in the context of suggestive identification procedures. See Perry, 703 S.W.2d at 670; Harris v. State, 670 S.W.2d 284, 285 (Tex. App.-Houston [1ˢᵗ Dist.] 1983, no pet.). We find that the failure of the appellant to complain or object in the trial court about the out-of-court identification procedure or the in-court identifications constituted a procedural default under our law, and, by failing to complain or object, he waived the error.

Even if appellant had preserved this issue for review, his contention would be without merit because the showup was not impermissibly suggestive. A defendant who contends on appeal that a trial court erred in allowing an in-court identification of him by a witness has a difficult and heavy burden to sustain, for unless it is shown by clear and convincing evidence that the witness' in-court identification of the defendant as the suspect was tainted by improper pretrial procedure and confrontations, the in-court identifica-tion is always admissible. See Jackson v. State, 628 S.W.2d 446, 448 (Tex.Crim.App. 1982). In determining the admissibility of an in-court identification, we employ a two-step inquiry: 1) whether the out-of-court identification procedure was impermissibly suggestive; and 2) whether that suggestive procedure gave rise to a very substantial likelihood of irreparable misidentification. See Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); see also Madden v. State, 799 S.W.2d 683, 695 (Tex.Crim.App.1990). An analysis under these steps requires an examination of the "totality of the circumstances" surrounding the particular case and a determination of the reliability of the identification. See Webb v. State, 760 S.W.2d 263, 269 (Tex.Crim.App.1988); Harvey v. State, 3 S.W.3d 170, 174 (Tex. App.-Houston [14ᵗʰ Dist.] 1999, pet. ref'd).

Turning to the first prong of this analysis, it is important to note at the outset that a pretrial procedure may be suggestive, but that does not necessarily mean it is impermissibly so. See Barley v. State, 906 S.W.2d 27, 33 (Tex.Crim.App. 1995). Here, Officer Cano brought appellant back to the scene of the offense minutes after the offense occurred so that the witnesses could confirm whether or not appellant was one of the individuals who robbed Castro. Such a procedure is not impermissibly suggestive. See Garza v. State, 633 S.W.2d 508, 513 (Tex.Crim.App. 1982) (opinion on reh'g). Having determined that no impermissibly suggestive procedure was utilized, we need not evaluate whether the procedure created a substantial likelihood of misidentification. See Barley, 906 S.W.2d at 34.

### Holdover Cell Identification Procedure

Finally, appellant claims that Torres' identification of him was tainted. Prior to the start of testimony on the second day of trial, the prosecutor had Torres view appellant in the holdover cell. This was done outside the presence of appellant's counsel. Subsequently, Torres

made an in-court identification of appellant. To preserve error for appellate review, the complaining party must make a timely, specific objection. *See Armstrong v. State,* 718 S.W.2d 686, 699 (Tex.Crim. App.1985). The objection must be made at the earliest possible opportunity. *See Marini v. State,* 593 S.W.2d 709 (Tex. Crim.App.1980). The complaining party must obtain an adverse ruling from the trial court on the objection. *See DeRusse v. State,* 579 S.W.2d 224 (Tex.Crim.App. 1979). Finally, the point of error on appeal must correspond to the objection made at trial. *See Thomas v. State,* 723 S.W.2d 696 (Tex.Crim.App.1986). The record in the case before us shows that appellant never obtained an adverse ruling from the trial court. Therefore, appellant's contention of error has not been preserved for appellate review.

■ Appellant also contends that the prosecutor's actions violated his Sixth Amendment right to counsel. Because appellant did not raise this claim before the trial court, he waived it for purposes of appeal. *See* Tex.R.App. P. 33.1; *Wilkens v. State,* 847 S.W.2d 547, 550 (Tex.Crim.App. 1992).

For the reasons stated above, we overrule appellant's point of error two.

## POINT OF ERROR THREE

■ By point of error three, appellant asserts that the evidence is legally insufficient to support his adjudication. In juvenile cases, the criminal legal sufficiency standard of review is employed. *See Matter of E.P.,* 963 S.W.2d 191, 193 (Tex. App.-Austin 1998, no writ). When reviewing the legal sufficiency of the evidence, the appellate court will look at all of the evidence in a light most favorable to the verdict. *See Garrett v. State,* 851 S.W.2d 853, 857 (Tex.Crim.App.1993). In so doing, the appellate court is to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct.

2781, 61 L.Ed.2d 560 (1979); *Ransom v. State,* 789 S.W.2d 572, 577 (Tex.Crim.App. 1989). This standard is applied to both direct and circumstantial evidence cases. *See Chambers v. State,* 711 S.W.2d 240, 245 (Tex.Crim.App.1986). The appellate court is not to reevaluate the weight and credibility of the evidence, but only ensures that the jury reached a rational decision. *See Muniz v. State,* 851 S.W.2d 238, 246 (Tex.Crim.App.1993); *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App.1988).

■ Appellant claims that because the identification procedures were tainted, the remaining evidence presented was insufficient to show that he participated in the robbery. This claim lacks merit because an appellate court must look at all the evidence, whether properly or improperly admitted, when evaluating the sufficiency of the evidence. *See Bobo v. State,* 843 S.W.2d 572, 575–76 (Tex.Crim.App.1992). Therefore, the legal admissibility of evidence does not affect the sufficiency of the evidence. *See id.*

■ Taking the evidence in the light most favorable to the verdict, both Castro and Torres identified appellant as one of the four individuals who beat and robbed Castro. L.L. testified that he threatened Castro with a knife. L.L. further testified that appellant participated in the robbery and knew about the knife. In viewing the evidence in the light most favorable to the jury's verdict, we conclude that any rational trier of fact could have found beyond a reasonable doubt that appellant was guilty of aggravated robbery. Point of error three is overruled.

## POINT OF ERROR FOUR

■ By point of error four, appellant asserts that the evidence is factually insufficient to support his adjudication. In reviewing the factual sufficiency of the evidence to support a conviction, we must look to all of the evidence "without the prism of 'in the light most favorable to the verdict.' " *See Clewis v. State,* 922 S.W.2d

126, 129 (Tex.Crim.App.1996). However, our review is not unfettered, for we must give "appropriate deference" to the fact finder. *See id.* at 136. We may not impinge upon the fact finder's role as the sole judge of the weight and credibility of witness testimony. *See Santellan v. State,* 939 S.W.2d 155, 164 (Tex.Crim.App.1997); *Dimas v. State,* 987 S.W.2d 152, 155 (Tex. App.-Fort Worth 1999, pet. ref'd). The jury, as fact finder, was the judge of the facts proved and of reasonable inferences to be drawn therefrom. *See Kirby v. Chapman,* 917 S.W.2d 902, 914 (Tex.App.-Fort Worth 1996, no pet.). We may set aside a verdict for factual insufficiency only when that verdict is so against the great weight and preponderance of the evidence so as to be clearly wrong and unjust. *See Clewis,* 922 S.W.2d at 134–35. This standard affords the appropriate deference to the jury's verdict and prevents the reviewing court from substituting its judgment for that of the jury. *See Santellan,* 939 S.W.2d at 164. If there is sufficient competent evidence of probative force to support the trial court's finding, a factual sufficiency challenge cannot succeed. *See D.R.H. v. State,* 966 S.W.2d 618, 622 (Tex.App.-Houston [14[th] Dist.] 1998, no pet.).

We have summarized the relevant testimony under point of error three. The evidence shows that the verdict was not contrary to the great weight of the credible evidence. We find that the evidence supporting the judgment was not so weak as to be manifestly unjust and clearly wrong. Therefore, we hold that the evidence is factually sufficient to support the judgment.

We overrule appellant's fourth point of error and *affirm* the judgment of the trial court.