COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
2-06-293-CV

 

IN THE MATTER OF                                                                             

 

G.L.C.P.                                                                                             

                                              ------------

 

           FROM
THE 323RD DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I. Introduction

Appellant G.L.C.P. appeals
his adjudication of delinquency and commitment to the Texas Youth Commission (ATYC@).  In two issues, appellant contends
the evidence is legally insufficient to support the juvenile court=s determination that he engaged in delinquent conduct and that the
juvenile court erred by committing him to the TYC.

II. Background Facts








On June 17, 2006, appellant,
who was then a sixteen-year-old, was walking around Parks Mall in Arlington,
Texas.  Parks Mall Public Safety Officer
Isaac Gerami and Officer Keith Humphrey, an off-duty officer with the Arlington
Police Department who was providing extra security for the mall, approached
appellant because he was not wearing shoes while inside the mall.  Officer Gerami had heard that appellant=s shoes were recently stolen, and Officer Humphrey had heard that
appellant was trying to recruit people to engage in a fight once the mall
closed.








After determining that
appellant was uncooperative and was giving misleading information about why he
was not wearing shoes and about who was picking him up from the mall, Officer
Gerami gave appellant a written trespass warning, which appellant signed,
banning him from the mall property for one year.  The warning stated that appellant was banned
from the AParks at
Arlington, including its parking lots and all property outlined on an attached
map.@  There was disputed testimony
regarding whether the officers gave appellant a written map of the
property.  Officer Gerami testified that
he gave appellant a map of the property when he gave him the written
warning.   However, Officer Humphrey
stated that there was no map attached to the written warning.  In any event, Officer Humphrey testified that
the officers showed appellant where he was prohibited from going several times
on either the map in the mall security office or on the map in the office of
the police substation inside the mall. 
Further, Officer T.L. McEowen walked appellant off the mall property
after giving him a verbal warning and explained that the ring road of the mall
marked the boundary that appellant could not cross for one year. 

Less than an hour after the
officers gave appellant the trespass warning, they saw him back at the mall;
this time, appellant was a passenger in a vehicle near the skating rink
entrance, which was a Acouple of
feet@ from where appellant had received the trespass warning.  Appellant told the officers that he had
returned to pick up his brother. 

Officer McEowen arrested
appellant on charges of criminal trespass. 
At the disposition hearing on appellant=s delinquency, the State introduced evidence regarding appellant=s social history, three previous adjudications, failure to complete
several Tarrant County Advocate Program (ATCAP@) terms and
monitoring programs, and referrals to the juvenile court for violating prior
probation orders.[2]  Consequently, the juvenile court entered a
judgment of delinquency and committed appellant to the TYC. 








 

III.  Appellant=s First Issue

In his first issue, appellant
contends that the evidence is legally insufficient to support the juvenile
court=s determination that he engaged in delinquent conduct.  More specifically, appellant argues that the
evidence is legally insufficient to establish his culpable mental state and
that he received notice of where he was prohibited from entering. 

A. Standard of Review

In the adjudication phase of
a juvenile case, the criminal legal sufficiency standard of review is
employed.  In re J.D.P. , 85
S.W.3d 420, 422-23 (Tex. App.CFort Worth 2002, no pet.); In re G.A.T., 16 S.W.3d 818, 828
(Tex. App.CHouston
[14th Dist.] 2000, pet. denied).  In reviewing
the legal sufficiency of the evidence to support a conviction, we view all the
evidence in the light most favorable to the judgment in order to determine
whether any rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Hampton v.
State, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).








This standard gives full play
to the responsibility of the trier of fact to resolve conflicts in the
testimony, to weigh the evidence, and to draw reasonable inferences from basic
facts to ultimate facts.  Jackson,
443 U.S. at 319, 99 S. Ct. at 2789.  The
trier of fact is the sole judge of the weight and credibility of the
evidence.  See Tex. Code Crim. Proc. Ann. art. 38.04
(Vernon 1979); Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App.
2000).  Thus, when performing a legal
sufficiency review, we may not re-evaluate the weight and credibility of the
evidence and substitute our judgment for that of the fact-finder.  Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).  We must resolve any inconsistencies in the
evidence in favor of the judgment.  Curry
v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

B. Applicable Law

The elements of criminal
trespass are (1) a person (2) without effective consent (3) enters the property
of another (4) knowingly or intentionally and (5) when he had notice that entry
was forbidden.  Tex. Penal Code Ann. ' 30.05(a) (Vernon Supp. 2006); In re J.M.R., 149 S.W.3d 289,
294 (Tex. App.CAustin 2004,
no pet.); see West v. State, 567 S.W.2d 515, 516 (Tex. Crim. App.
[Panel Op.] 1978) (holding that when the statute governing criminal trespass
does not prescribe a culpable mental state, a culpable mental state of
intentionally or knowingly is used). 

 








C. Analysis

Appellant first asserts that
the evidence at the adjudication hearing did not show that he intentionally or
knowingly trespassed.  We disagree.  

Appellant returned to the
mall less than an hour after he had received the trespass warning and was
escorted off the property.  Although
appellant was the passenger in the vehicle, he had been warned by three
officers not to enter within the ring road that marked the perimeter of the
mall property.  Appellant asserts that he
never set foot upon the mall property and was merely a backseat passenger who
had no control over the car=s movement.  However, when the
officers apprehended him, appellant claimed that he had returned to the mall to
pick up his brother.  The juvenile court
could have inferred from this statement that appellant voluntarily re-entered
the mall.  

Regardless, appellant=s mere presence at the mall after being told not to re-enter
constituted trespass.  See Dunn
v. State, 979 S.W.2d 403, 408 (Tex. App.CAmarillo 1998, pet. ref=d) (holding that appellant=s mere presence on the property, given the statutory notice
requirements, constituted a trespass). 
Additionally, Officer McEowen testified that he told appellant that
other people could not bring him back onto the mall=s property. 








Appellant next contends that
the State failed to prove that he had notice that entry onto the mall=s property was forbidden. 
Specifically, appellant argues that the notice given to him was
contradictory and did not clarify what actions were prohibited.  Appellant asserts that the written warning
stated there was an attached map, but no map was entered into evidence at the
adjudication hearing.  Further, notes
appellant, Officer Gerami testified that he gave appellant a map of the
property, but could not be sure if appellant retained the map.

However, Officer Humphrey
testified that when he gave appellant the trespass warning, he showed appellant
prohibited areas on either the map in the mall security office or on the map in
the office of the police substation located within the mall.  Also, the text of the written warning states
that the mall=s parking
lots are included within the areas to which entry was prohibited.  The record reflects that the officers
repeatedly told appellant that he was not allowed to come within the ring road
that marked the outer boundary of the mall=s property.  Officer Humphrey
pointed to a map several times in explaining to appellant the boundaries which
marked the area from which appellant was prohibited, and Officer McEowen, who
actually walked appellant off the property, testified that he made certain that
appellant understood he was not allowed to return within the ring road.  Despite all of these warnings, appellant
reentered the mall=s parking
lot to allegedly retrieve his brother and was apprehended only a Acouple of feet@ from where
he was first warned.








After considering the
evidence in the light most favorable to the judgment, we conclude that the
evidence was legally sufficient to establish that appellant intentionally or
knowingly trespassed after receiving notice of where he was prohibited from
entering.  Jackson, 443 U.S. at
319, 99 S. Ct. at 2789; Hampton, 165 S.W.3d at 693.  Accordingly, we overrule appellant=s first issue.

IV. Appellant=s Second Issue

In his second issue, appellant
contends that the juvenile court erred in determining that commitment to TYC
was warranted.  Specifically, appellant
asserts that he was not a serious juvenile offender.  We disagree.

A. Applicable Law

The juvenile court has broad
discretion to determine the proper disposition of a juvenile who has been
adjudicated.  In re K.J.N., 103
S.W.3d 465, 465-66 (Tex. App.CSan Antonio 2003, no pet.); In re J.D.P., 85 S.W.3d 420, 426
(Tex. App.CFort Worth
2002, no pet.) Absent an abuse of discretion, a reviewing court will not
disturb the juvenile court=s determination.  In re
K.J.N., 103 S.W.3d at 465-66; In re J.D.P., 85 S.W.3d at 426.  An abuse of discretion occurs when the
juvenile court acts unreasonably or arbitrarily without reference to any
guiding rules and principles.  In re
K.J.N., 103 S.W.3d at 466; In re T.K.E., 5 S.W.3d 782, 784 (Tex.
App.CSan Antonio 1999, no pet.).








If a juvenile is adjudicated
to have engaged in misdemeanor delinquent conduct and disposition is required,
a court may commit the juvenile to TYC without a determinative sentence if the
juvenile has been adjudicated delinquent twice previously, the conduct that was
the basis of one adjudication occurred after the date of another previous
adjudication, and the conduct for which the juvenile is currently being
adjudicated occurred after the date of at least two of the previous
adjudications.  Tex. Fam. Code  ' 54.04(s) (Vernon Supp. 2006); In re A.I., 82 S.W.3d 377, 380
(Tex. App.CAustin 2002,
pet. denied). 

                                             B. Analysis

The record shows that
appellant had three prior adjudications for misdemeanor offenses.  Appellant was first adjudicated delinquent
for misdemeanor evading arrest on April 8, 2005.  He received probation for this offense.  On June 10, 2005, appellant tested positive
for marijuana use, but tested negative in subsequent tests.  On August 11, 2005, appellant was referred to
the juvenile court for violating probation by failing to report. 








Appellant was adjudicated
delinquent again on October 6, 2005 for evading arrest.  Subsequently, the juvenile court gave
appellant a second chance for probation and participation in TCAP.  However, appellant was adjudicated delinquent
a third time on November 22, 2005 for failing to identify himself to a police
officer, upon which he was given a third chance to complete probation.  After the third delinquency adjudication,
appellant was referred three times for violating probation terms.[3]

Thus, at the time of the
disposition hearing on his criminal trespass offense, appellant had been
adjudicated delinquent three times previously and was on probation.  Further, appellant=s adjudication for the criminal trespass on July 25, 2006 was after
his three previous adjudications. 








Appellant contends that the
juvenile court abused its discretion by committing him to TYC because it did
not consider alternative placement, community based programs, stabilization of
appellant=s home life,
or that the criminal infractions were Atrivial.@  However, this is not the test for determining
whether the juvenile court acted arbitrarily. 
To avoid abusing its discretion in determining whether a juvenile should
be committed, a juvenile court must consider whether it is in the child=s best interest to be placed outside the home, whether reasonable
efforts have been taken to prevent or eliminate the need for the child=s removal from home, and whether while in the home, the child cannot
receive the quality of care and level of support and supervision needed to meet
the conditions of probation.  Tex. Fam. Code Ann. ' 54.04(i); In re K.J.N., 103 S.W.3d at 466; In re T.K.E.,
5 S.W.3d at 784. 

At the disposition hearing,
appellant=s probation
officer, Greg Lemear, testified that aside from regular probation, appellant
had been placed in the TCAP program, but was discharged for failing to
participate.  Appellant was also placed
on Intensive Supervision Probation (AISP@) after his
second adjudication and was still on ISP during the criminal trespass
adjudication because Ahis behavior
has not been such to warrant taking him off.@[4]  Appellant was also unable to
complete four out of six monitoring programs in the year prior to his most
recent offense.








While in detention for the
current offense, appellant got along with peers but was Avery argumentative@ and defiant towards the staff. 
Lemear stated that his greatest concern was appellant=s lack of supervision once released. 
Lemear testified that appellant was most stable when he was with his
aunt.  However, according to appellant=s mother, the aunt no longer has contact with appellant.  Appellant=s mother, Valerie AZapple@ Pickins,
testified that she worked nights and would prefer that appellant live with his
grandmother.  However, appellant was
living with his grandmother at the time he committed the criminal trespass
offense.

Because of appellant=s prior adjudications, commitment to TYC was an available disposition
under family code section 54.04(s).  Tex. Fam. Code Ann. ' 54.04(d)(2), (s).  Further, the
record shows that prior attempts to keep appellant at home and in monitoring
programs had failed and that it serves appellant=s best interest to be placed outside the home.  Therefore, the juvenile court did not abuse
its discretion by committing appellant to TYC. 
See Tex. Fam. Code Ann.
' 54.04(i); In re K.J.N., 103 S.W.3d at 466; In re T.K.E.,
5 S.W.3d at 784. Accordingly, we overrule appellant=s second issue.

                                           V.
Conclusion

Having overruled appellant=s two issues, we affirm the juvenile court=s judgment finding appellant delinquent and committing him to the TYC.

 

 

PER CURIAM

 

PANEL F:    LIVINGSTON, WALKER, and MCCOY, JJ.

 

DELIVERED:
May 10, 2007











[1]See Tex. R. App. P. 47.4.





[2]TCAP
is a home-based program which utilizes paid, trained adults (advocates) who live in the same communities
as the youth to develop relationships with at-risk youth and families.  





[3]For
the first adjudication, appellant received one year of probation, which ran
from April 8, 2005 until April 8, 2006. 
According to the record, he received a year of probation starting on
October 6, 2005 for the second adjudication and six months=
probation starting on November 22, 2005 for the third adjudication.  It is unclear from the record if appellant
was serving the second or third probation terms, or both concurrently, when he
committed the trespass offense.





[4]ISP
provides intensive intervention and rehabilitative programming to prevent
incarceration.  The program involves
high-frequency face-to-face contacts ranging from daily to twice weekly.