Affirmed and Memorandum Opinion filed July 22, 2008








Affirmed and Memorandum Opinion filed July 22, 2008.

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-00625-CR

 

MOSES BARRACKS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 184th District Court

Harris County, Texas

Trial Court Cause No. 1057725

                                                                                                                                               


 

M E M O R A N D U M   O P I N I O N

Moses Barracks appeals his  robbery
conviction in two issues, contending that the trial court erred in (1)
permitting an in-court identification of appellant based upon an assertedly
improper out-of-court show-up identification; and (2) admitting testimony about
appellant=s alleged gang membership during the trial=s punishment phase.  We affirm.








Background

At about 11:30 p.m. on February 13,
2006,[1] Julius
Williams was robbed by two men while Williams was entering his car in the
parking lot of a video store. The two men both had dreadlocks and were wearing
clothing with a camouflage pattern.  Williams testified that appellant and the
other man Arushed him from behind;@ while the second man stood in front of Williams=s car with a pistol-grip shotgun,
appellant got in the passenger seat and pointed a black revolver at Williams. 
Williams testified that while he sat in the driver=s seat, appellant told him to turn
off the alarm and start the car.  Williams testified that appellant asked about
the working condition of the car.  

Williams testified he was able to run
from the car when appellant looked away.  Williams heard four shots as he
fled.  He further testified that appellant then drove off in Williams=s car.  Williams testified the whole
event took about seven minutes.   

Williams notified police within
minutes of the robbery.  Williams gave police a description of both assailants,
telling police they were African-American males with dreadlocks wearing
camouflage shirts and blue jeans; Williams described the assailant inside the
car as being about 20 years old.  Williams also provided a description of his
car, but he could not provide the license plate number because the car was
newly purchased and had no plates.








Police located the car within 45
minutes at a nearby apartment complex.  The car was surrounded by four
African-American males wearing camouflage clothing, and a female. Appellant was
one of the African-American males surrounding the car.  The police approached
and told them to lie down.  One male and the female attempted to escape but were
apprehended in a nearby field.  Appellant surrendered at the scene.  A revolver
matching the description of the one used by appellant in the robbery was
located in bushes close to where appellant lay on the ground.  An assault rifle
was located in the field where the two persons who had fled the scene were
apprehended.

Police took Williams to the apartment
complex.  They presented four individuals to Williams at the apartment complex,
asking him if he could identify any of them as the men who robbed him.  At
least three of these men had camouflage jackets and dreadlocks.  Each of the
men, including appellant, had been standing around Williams=s car when police arrived at the
apartment complex.

Williams identified appellant as one
of the men who had robbed him outside the video store.  He later identified
appellant at a police line up at the station.  Williams identified appellant
again during trial Abased on [his] recollection of what took place on February
14, 2006.@ 

The investigation also recovered (1)
a number of guns near Williams=s car, one of which was introduced at trial as the revolver
used by appellant; and (2) a roll of duct tape in the car matching the duct
tape found on the recovered pistol, which had appellant=s fingerprints on it.  Williams
identified the revolver as being similar to the like the one used by appellant
during the robbery.

Appellant was convicted and elected
to have the jury assess punishment.  At the punishment phase of the trial, the
prosecution offered into evidence photos showing appellant making hand
gestures; these photos had been found in appellant=s residence.  Prosecutors introduced
testimony that the hand gestures appeared to be gang-related.  On July 13,
2007, appellant was sentenced to confinement for 10 years.  He timely filed
this appeal on July 24, 2007. 

Analysis

Identification








When faced with a challenge to an
out-of-court identification, courts must look to the totality of the
circumstances surrounding the identification to determine if the procedure used
was unnecessarily suggestive so as to render that identification unreliable.  Loserth
v. State, 963 S.W.2d 770, 771-72 (Tex. Crim. App. 1998) (en banc).  For the
identification to be deemed unreliable, the defendant must demonstrate by clear
and convincing evidence that the unnecessary suggestiveness created a very
substantial likelihood of misidentification.  See Barley v. State,
906 S.W.2d 27, 33-34 (Tex. Crim. App. 1995) (en banc).   Even if the procedure
is found to be unnecessarily suggestive, it will be deemed reliable if there is
no substantial likelihood of misidentification under a totality of the
circumstances test.  See Webb v. State, 760 S.W.2d 263, 269 (Tex. Crim.
App. 1988) (en banc); see also Barley, 906 S.W.2d at 33; In re G.A.T.,
16 S.W.3d 818, 827 (Tex. App.CHouston [14th Dist.] 2000, pet. denied) (under the first
prong, a procedure may be suggestive and still not be impermissibly so).   In
assessing likelihood of misidentification, we consider the reliability factors
set forth in Neil v. Biggers, 409 U.S. 188, 199-200 (1972).  See also
Loserth, 963 S.W.2d at 771-72; Santos v. State, 116 S.W.3d
447, 455 (Tex. App.CHouston [14th Dist.] 2003, pet. ref=d).

We defer to the trial court=s determinations of historical facts,
if supported by the record, when they are contingent upon the credibility or
demeanor of witnesses.  Loserth, 963 S.W.2d at 773-74.  However, in
interpreting mixed questions of fact and law that do not depend upon the
credibility or demeanor of witnesses, we apply a de novo standard of
review.  Id. at 774.








Appellant contends that the show-up
identification was unduly suggestive because he was taken out of a squad car in
handcuffs at the scene where Williams=s car was recovered, and shown to
Williams for identification.  This court has found that a one-man show-up is
not impermissibly suggestive when a potential suspect is brought to the scene
of the crime for victims to positively identify him as the suspect.  See In
re G.A.T., 16 S.W.3d at 827.[2] In this case,
seven individuals were assembled to be shown to Williams.  Four were brought
before Williams individually in handcuffs. Williams identified appellant as
being one of the men who had robbed him. At that point, the officers on the
scene ended the show-up, and took all of the assembled individuals to the
station for further identification procedures. 

Because Williams was presented with a
group of individuals, we do not find the procedure to be impermissibly
suggestive.  It is not enough to condemn a procedure as impermissibly
suggestive because of an inherent presumption that at least one of the
individuals in the line-up is a guilty party.  AIt is undoubtedly
the case that in a substantial number of live lineups the identification witness
will presuppose that police have some reason to believe one of the participants
is the perpetrator.  Were this fact alone sufficient to render the lineup
impermissibly suggestive, however, precious few lineups would meet
constitutional muster.@  Webb, 760 S.W.2d at 272.  Therefore, appellant does not satisfy the first
prong of the test addressing unnecessary suggestiveness.

Even if we were to reach the second
prong addressing likelihood of misidentification,  we still would conclude that
the challenged procedure did not give rise to a very substantial likelihood of
irreparable misidentification.  See Delk v. State, 855 S.W.2d 700, 706
(Tex. Crim. App. 1993) (en banc).

The second prong is conducted under a
totality of the circumstances test, and includes the following considerations: (1) the
opportunity of the witness to view the criminal at the time of the crime; (2)
the witness=s degree of attention; (3) the accuracy of the witness=s prior
description of the criminal; (4) the level of certainty demonstrated by the
witness at the confrontation; and (5) the length of time between the crime and
the confrontation.  Delk,
855 S.W.2d at 706; Biggers, 409 U.S. at 199-200. 

According to Williams=s testimony, he got a good look at
appellant during the seven-minute duration of the confrontation. Williams also
testified that he engaged in conversation with appellant as appellant sat next
to him in the front seat of the car.  Immediately following the robbery he gave
an accurate enough description of appellant to allow the police to locate and
detain appellant.  








Williams did not hesitate to identify
appellant accurately on each occasion he was called upon to do so.  Less than
an hour after the robbery, while his memory was still fresh, he picked out
appellant as the assailant.  About 90 minutes later at the police station, he
again selected appellant from among an array of individuals through a one-way
mirror.[3]  At trial,
Williams identified appellant twice; he testified that he identified appellant
based upon his recollections of the events on February 14, 2006, and that he
had no doubt concerning his identification.  

Given the opportunities provided to
Williams to identify his assailants, and the consistency and firmness of his
identification, there is no substantial likelihood appellant was
misidentified.  See Biggers, 409 U.S. at 201 (identification upheld
where seven months elapsed between rape and confrontation); Webb, 760
S.W.2d at 273 (identification determined valid where five months elapsed
between the crime and victim=s first identification of accused).

Appellant has failed to demonstrate
by clear and convincing evidence that unnecessary suggestiveness created a very
substantial likelihood of misidentification.  See Barley, 906 S.W.2d at
33-34.   Even if the procedure was unnecessarily suggestive, there is no
substantial likelihood appellant was misidentified under a totality of the
circumstances test.  See Webb, 760 S.W.2d at 269; see also Barley,
906 S.W.2d at 33. Appellant=s first issue is overruled.

Gang Membership

In appellant=s second issue he contends that the
trial court erred in admitting testimony regarding appellant=s alleged gang membership during the
punishment phase of the trial.   








A trial court may admit any evidence
that is relevant at the sentencing stage of the trial, including a defendant=s gang membership, as a basis for
assisting the jury to determine the character of the accused and assess a
proper punishment.  See Beasley v. State, 902 S.W.2d 452, 456-57 (Tex.
Crim. App. 1995) (en banc); Aguilar v. State, 29 S.W.3d 268, 270 (Tex.
App.CHouston [14th Dist.] 2000, no pet.)
(gang membership is admissible at punishment phase of trial as character
evidence); see also Tex. Code Crim. Proc. Ann. art. 37.07 ' 3(a)(1) (Vernon Supp. 2007); Erazo
v. State, 144 S.W.3d 487, 491 (Tex. Crim. App. 2004) (Awe have explained that relevance
during the punishment phase of a non-capital trial is determined by what is helpful
to the jury@) (emphasis in the original).  We review the admission of the
evidence under an abuse of discretion standard of review.  Casey v. State,
215 S.W.3d 870, 879 (Tex. Crim. App. 2007).

The relevance of gang membership
depends upon whether the jury receives enough information to make evidence
about such membership useful to its determination.  To prove relevance
of a defendant=s membership in a gang, the State must offer proof of
(1) the gang=s violent and illegal activities; and (2) defendant=s membership in
the gang.  See Mason
v. State, 905 S.W.2d 570, 577 (Tex. Crim. App. 1995) (en banc); see also
Beasley, 902 S.W.2d at 457.  The Texas Court of Criminal Appeals has held:

Although relevant,
gang membership alone would be meaningless to a jury which has no knowledge of
the gang=s purpose or
activities. For the jury to assess a defendant=s character based
on his gang membership, not only should the jury know of the defendant=s gang membership,
but also of the activities and purposes of the gang to which he belongs.
Without this additional information, the jury has nothing to conclude whether
membership in this gang is a positive or negative character trait of the
defendant. 

Anderson v. State, 901 S.W.2d 946, 950 (Tex. Crim.
App. 1995) (en banc); see also Reyes v. State, No. 14-03-00414-CR, 2004
WL 1171766, at *5 (Tex. App.CHouston [14th Dist.] May 27, 2004, no pet.) (requiring, at a
minimum, evidence of defendant=s membership in the gang and evidence of the gang=s character and reputation).  

In the present case, Officer Croas
testified at the trial=s punishment phase concerning photographs found in appellant=s apartment following his arrest. The
photographs were admitted into evidence and Officer Croas testified, in
pertinent part, as follows:








State: 
Without going into what anyone told you, was there any particular reason you
collected these particular photographs?

 

Officer:
Appeared to have gang signs on it, and may be related to an individual case.

 

State: Let
me talk with you a little bit about those gang signs.  Do you have any training
as a police officer in gang activity or gang investigation?

 

Officer:
Yes, sir.

 

* * *

 

State:
Okay.  It is your expert opinion that what is being displayed within State=s Exhibit 23 and 24 are, in fact, gang signs?

 

Officer:
Yes, sir.

* * * 

 

State: Now,
looking at the gang signs B what you have
testified are gang signs depicted within State=s Exhibit 23 an 24, are you able to identify if they belong to a
particular set or particular gang?

 

Officer: I
cannot.  

 

Appellant objected to the relevance
of the photos at trial, and contends that Officer Croas= testimony was not probative of
appellant=s character because it provided no information to the jury about any
particular gang, or any particular gang=s activities, so as to assist the
jury in tailoring an appropriate sentence.  See Beasley, 902 S.W.2d at
457; Erazo, 144 S.W.3d at 491 (a photograph should be admitted only
where it will provide information that logically assists the jury in
determining either guilt or punishment).  We agree that the trial court erred
in admitting the gang-related evidence.








We turn to the harm analysis. 
Nonconstitutional errors that do not affect the substantial rights of the
defendant must be disregarded. Tex. R. App. P. 44.2(b).  Substantial rights are
not affected by the erroneous admission of evidence if the appellate court,
after examining the entire record, is assured the error did not influence the
jury=s decision or only influenced it
slightly. 
See Motilla v. State, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002); Johnson
v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).  If there is no influence or only a
slight effect on the finder of fact, reversal is not required.  See Johnson
v. State, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001) (en banc).  AIn assessing the likelihood that the
jury=s decision was adversely affected by
the error, the appellate court should consider everything in the record,
including any testimony or physical evidence admitted for the jury's
consideration, the nature of the evidence supporting the verdict, the character
of the error, and how it might be considered in connection with other evidence
in the case.@  Motilla, 78 S.W.3d at 355; see also Reyes, 2004 WL 1171766, at *7 (AIn considering
whether inadmissible evidence prejudiced appellant during the
punishment phase, we also look to the other evidence presented, such as prior
convictions, bad acts, and the nature of the crime committed@). 

In this case, the
State established that appellant committed a violent act by holding Williams at
gunpoint and forcing Williams to surrender his car.  The State proffered
evidence that shots were
fired behind Williams as he fled the car; one of the guns used was linked to
appellant via fingerprints and duct tape.  Among the others detained at the
apartment complex, at least three were also armed. Likewise, evidence of
appellant=s daily drug use and ownership of firearms was presented to the jury. 
This evidence provides assurance that the admission of testimony regarding gang
membership did not influence the jury=s decision.  See Thorton v. State,
925 S.W.2d 7, 13-14 (Tex. App.CTyler 1994, pet. ref=d) (any alleged error in admitting
gang evidence was rendered harmless in light of evidence demonstrating violent
circumstances of the crime and appellant=s prior convictions).








The jury in this case assessed
punishment at 10 years _ far less than the 25 years the State sought, and close to the minimum in
a range of 5-99 years or life imprisonment the jury considered.[4]

Viewing the entire record, we
conclude that  the gang-related evidence did not affect the appellant=s substantial rights. Appellant=s second issue is overruled. 

Conclusion

The trial court=s judgment is affirmed.

 

 

 

/s/        William J. Boyce

Justice

 

Judgment rendered and Memorandum
Opinion filed July 22, 2008.

Panel consists of Chief Justice
Hedges, and Justices Brown and Boyce.

Do Not Publish C Tex. R. App. P. 47.2(b).

 









[1]           In the complaint the aggravated robbery is
detailed to have occurred on or about February 14, 2006.  Likewise, some of the
testimony refers to February 14th. 





[2]           While a one-man show-up has been
criticized, Aadmission of evidence of a one man show-up without
more does not violate due process.@ Garza
v. State, 633 S.W.2d 508, 512 (Tex. Crim. App. 1982).  





[3]           There is some uncertainty in the record
about whether Williams also picked appellant out of a photo array.  At one time
his testimony indicates he selected both appellant and the other individual who
robbed him from a photo array.  He indicates later that he never picked
appellant out of a photo array.  This uncertainty is not material to the
resolution on appeal because there is ample evidence regarding Williams= identification of appellant even if the photo array
evidence is disregarded.





[4]           The jury also had the option, if it found
that appellant had never been convicted of a felony in this or any other state,
to recommend community supervision.  In addition, a fine of up to $10,000 was
available for assessment.  The jury here did not assess a fine.