

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## NUMBER 13-08-00059-CV

## IN THE MATTER OF M.V. JR., A JUVENILE

## NUMBER 13-08-00104-CV

## IN THE MATTER OF C.A.V., A JUVENILE

**On appeal from the County Court at Law
of Victoria County, Texas, Sitting as a Juvenile Court.**

## MEMORANDUM OPINION[1]

### Before Justices Rodriguez, Garza, and Vela
### Memorandum Opinion by Justice Rodriguez

A jury found it true that appellants, M.V. Jr. and C.A.V., juveniles, committed the

offense of arson, enhanced by bodily injury to Ray Gregory. *See* TEX. PENAL CODE ANN.

---

[1]*See* TEX. R. APP. P. 47.4 (providing that memorandum opinions should be "no longer than necessary to advise parties of the court's decision and basic reasons for it").

§ 28.02 (Vernon 2003). Disposition was tried to the same jury. Following the recommendation of the jury, the trial court sentenced both M.V. Jr. and C.A.V. to a determinate sentence of forty years' placement in the custody of the Texas Youth Commission with a possible transfer to the Institutional Division of the Texas Department of Criminal Justice. These appeals followed.[2]

By two issues, appellants contend that: (1) the evidence was insufficient to support the jury's finding that Gregory, a firefighter, suffered bodily injury as result of the fire at the elementary school; and (2) the trial court abused its discretion by joining the cases for trial. By a third issue, C.A.V. asserts the trial court erred in denying a motion to suppress his statement made to fire investigators.[3] We affirm.

## I. SUFFICIENCY OF THE EVIDENCE

By their first issue, appellants challenge the sufficiency of the evidence to establish the felony enhancement portion of the offense. *See id.* § 28.02(d)(1). They contend that the evidence was legally and factually insufficient to support the jury's finding that Gregory suffered bodily injury and that his bodily injury, if any, was caused by the fire.

### A. Standard of Review and Applicable Law

"In the adjudication phase of a juvenile case, the criminal legal and factual sufficiency standards of review are employed." *In re J.D.P.*, 85 S.W.3d 420, 422 (Tex. App.–Fort Worth 2002, no pet.) (citing *In re G.A.T.*, 16 S.W.3d 818, 828 (Tex. App.–Houston [14th Dist.] 2000, pet. denied)). When we review a legal sufficiency

---

[2]This opinion consolidates the Court's analysis of both appeals. *See id.* at rule 47.1.

[3]M.V. Jr. enumerates two separate issues on appeal, including one regarding the sufficiency of the evidence and one regarding the joining of the trials. C.A.V. presents four separate issues, including two sufficiency issues, one joinder issue, and one motion to suppress issue. For purposes of organization, we combine and renumber the issues as three and address them as set forth above. *See id.*

2

challenge, we view all the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)); *Coleman v. State*, 131 S.W.3d 303, 307 (Tex. App.–Corpus Christi 2004, pet. ref'd). We do not reevaluate the weight and credibility of the evidence, and we do not substitute our own judgment for that of the trier of fact. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (en banc); *Beckham v. State*, 29 S.W.3d 148, 151 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd). Instead, we consider whether the jury reached a rational decision. *Beckham*, 29 S.W.3d at 151.

Evidence is factually insufficient only when the evidence as to an element is so obviously weak as to undermine confidence in the fact-finder's determination or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Berry v. State*, 233 S.W.3d 847, 854 (Tex. Crim. App. 2007) (citing *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000) (en banc)); *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); *Coleman*, 131 S.W.3d at 307. "Such a factual sufficiency review requires the reviewing court to consider all of the evidence." *Berry*, 233 S.W.3d at 854 (citing *Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006)). In determining factual sufficiency, "[w]e are not bound to view the evidence in the light most favorable to the prosecution and may consider the testimony of all the witnesses." *Coleman*, 131 S.W.3d at 307 (citing *Johnson*, 23 S.W.3d at 10-12). It is appropriate to disagree with the fact-finder's determination only when the record clearly indicates that such a step is

necessary to prevent the occurrence of a manifest injustice. *Id*. at 307-08 (citing *Johnson*, 23 S.W.3d at 10-12).

We measure the sufficiency of the evidence by the elements of the offense as defined by the hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) (applying principle to legal sufficiency review); *Coleman*, 131 S.W.3d at 307 (same); *Adi v. State*, 94 S.W.3d 124, 141 (Tex. App.–Corpus Christi 2004, pet ref'd) (applying principle to factual sufficiency review). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Gollihar v. State*, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); *Malik*, 953 S.W.2d at 240.

To obtain a conviction for arson, the State must prove that a person "start[ed] a fire . . . with intent to destroy or damage . . . any building, . . . knowing that it is within the limits of an incorporated city . . . ." TEX. PENAL CODE ANN. § 28.02(a)(2)(A). "An offense under this section is a felony of the second degree, except that the offense is a felony of the first degree if it is shown [at] trial . . . that . . . bodily injury . . . was suffered by any person by reason of the commission of the offense." *Id.* § 28.02(d)(1). "Bodily injury" is defined as "physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8) (Vernon Supp. 2008).

### B.  Bodily Injury

Appellants urge by their first issue that the evidence is insufficient to establish that Gregory suffered physical impairment. We disagree.

4

In this case, the jury was presented with evidence that Gregory helped to extinguish the fire by participating in the following assignments: (1) entering the school and looking for possible extension of the fire in other parts of the building; (2) looking for flare-ups, i.e., to "[s]ee if the fire kicked up in any way," and holding a ladder so that another firefighter could climb onto the roof to check the extent of one flare-up; and (3) entering the room where the fire originated to again check for fire extension. Gregory testified that, compared to other fires he had worked, the room of origin was unusually hot. As they checked for fire extension in that room, they discovered a fire inside the cinder block wall. Based on Gregory's testimony, the three assignments, including breaks, lasted a total of approximately forty-five minutes to one hour. Between his first and second assignments, Gregory took a break to exchange air bottles and drink water in order to stay hydrated. Between his second and third assignments, Gregory changed air bottles. It is unclear from the testimony whether he drank water during this break.

The evidence further reveals that as Gregory left the room of origin at the end of his third assignment, he started to feel "not right" and "to sweat very profusely more than normal"; he was not "feeling good at all." Gregory was told to go to a rehab area where he removed his upper gear and started to feel dizzy. He tried to drink water and sat down on the curb. Because Gregory was still feeling severely dizzy, he laid on his side. He felt weak, tried to sit up, got "real dizzy," and laid down again. Gregory thought he was going to faint or fall and hurt himself. In addition, Gregory testified that his blood pressure was low—98 over 60[4]—and that the oxygen concentration in his blood (94%) was low.

---

[4]Gregory testified that this blood pressure was abnormally low for him. Emergency room physician, Victor Arrellano, M.D., testified that he considered a blood pressure of 98 over 60 to be "borderline."

5

Paramedic and emergency medical technician personnel placed Gregory on a stretcher and then into an ambulance. According to firefighter and paramedic Dustin Ferguson, Gregory was given intravenous fluids and oxygen, and a cardiac monitor was placed on him. Gregory's feet were elevated, and he was cooled. He was taken by ambulance to a local hospital. Upon arrival at the hospital, blood tests were run, determining that Gregory's potassium and sodium levels were below normal limits. Gregory was given oral potassium to elevate his potassium levels. Gregory began to feel better after about twenty minutes. Ferguson testified that, in his opinion, Gregory suffered bodily injury because "he was ill that night."

Victor Arrellano, M.D., the emergency room physician who attended to Gregory, testified that when he first saw him, Gregory was "very apprehensive but stable." Dr. Arrellano testified that Gregory "was in a fire so he became dehydrated and became dizzy" and if he had not received treatment, his condition would have worsened. Dr. Arrellano testified that in his expert medical opinion, Gregory had a short-term impairment of a physical condition that night. Gregory was diagnosed with mild dehydration.

Appellants assert that the following evidence is contrary to the jury's determination that Gregory's physical condition was impaired: IV fluids given to Gregory at the scene of the fire stabilized his condition by the time he arrived at the hospital; Gregory re-hydrated with no long-term effects after only a period of twenty minutes; and Dr. Arrellano's examination of Gregory evidenced no pain, normal blood pressure, normal temperature, and oxygen saturation in the appropriate range.

"[B]odily injury" includes "any impairment of physical condition." *Id*. The definition is broad. *See Contreras v. State*, 54 S.W.3d 898, 903 (Tex. App.–Corpus Christi 2001, no

6

pet.) (explaining, in an assault case, that "the definition of 'bodily injury' is purposefully broad, encompassing even relatively minor physical contacts" as long as the contacts constitute more than mere offensive touching); *York v. State*, 833 S.W.2d 734, 736 (Tex. App.–Fort Worth 1992, no pet.) (citing *Lane v. State*, 763 S.W.2d 785, 786 (Tex. Crim. App. 1989) (en banc) (same)). It does not require proof that the impairment last a certain amount of time. *See* TEX. PENAL CODE ANN. § 1.07(a)(8). The definition does not require that the impairment be permanent. *See id.* In fact, it does not even require medical treatment. *See id.*

In this case, the evidence established that Gregory's physical condition was impaired when he experienced profuse sweating, severe dizziness, weakness, faintness, lower-than-normal blood pressure, and low oxygen concentration in his blood. Gregory was diagnosed with mild dehydration that was resolved with rest and re-hydration and without which his condition would not have improved. We cannot conclude that evidence of dehydration lasting approximately twenty minutes with no long-term effects is contrary to the jury's determination that Gregory's physical condition was impaired. Thus, viewing all the evidence in the light favorable to the prosecution, we conclude that a rational jury could have found that Gregory suffered bodily injury beyond a reasonable doubt. *See Jackson*, 443 U.S. at 318-19; *Coleman*, 131 S.W.3d at 307. Thus, the evidence is legally sufficient to establish that Gregory suffered physical impairment. *See Jackson*, 443 U.S. at 319.

Moreover, considering all of the evidence, we cannot conclude that the evidence establishing bodily injury is so obviously weak as to undermine confidence in the fact-finder's determination, or that the proof of guilt, although adequate if taken alone, is greatly

outweighed by contrary proof. *See Berry*, 233 S.W.3d at 854; *Coleman*, 131 S.W.3d at 307. Neither can we conclude that the jury's determination constituted a manifest injustice. *See Coleman*, 131 S.W.3d at 307 (citing *Johnson*, 23 S.W.3d at 10-12). The evidence is, therefore, also factually sufficient to establish that Gregory suffered physical impairment.

### C. Causal Connection

By their first issue, appellants also challenge the sufficiency of the evidence to establish a causal connection between Gregory's dehydration and the fire. Appellants assert that it was not the heat and exertion that caused the dehydration but Gregory's alleged failure to replenish fluids properly.

Arson is a second degree felony "unless bodily injury . . . was suffered by any person *by reason of* the commission of the offense." TEX. PENAL CODE ANN. § 28.02(d) (emphasis added). "'[B]y reason of' is wordy for *because of.*" BRYAN A. GARNER, A DICTIONARY OF MODERN LEGAL USAGE 125 (2d ed. 1995). Based on the relevant language of section 28.02(d), the offense, thus, becomes a felony of the first degree only when bodily injury is *by reason of* or *because of* the fire caused by the arsonist. *See Wilson v. State*, 541 S.W.2d 174, 176 (Tex. Crim. App. 1976) (concluding "that the offense becomes a felony of the first degree only when bodily injury less than death is sufficiently *related to or a result of* the fire . . . caused by the arsonist" (emphasis added)).

The penal code also provides that a person is criminally responsible for causing an injury if the injury would not have occurred "but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor was clearly insufficient." TEX. PENAL CODE ANN. § 6.04(a) (Vernon 2003). Here, appellants are criminally responsible for causing

8

Gregory's dehydration if the injury would not have occurred but for the commission of the arson, operating alone or concurrently with Gregory's alleged failure to hydrate, unless the alleged failure to hydrate was clearly sufficient to produce the injury and the commission of the arson clearly insufficient. *See id.* §§ 6.04(a), 28.02(d).

In this case, the commission of the arson required the presence of firefighter Gregory who wore bunker gear and was exposed to the heat as he completed three fire-fighting assignments at the elementary school. *See id.* § 6.04(a). Gregory became dehydrated immediately after completing his third assignment. But for the commission of the arson, Gregory would not have been fighting the fire. But for the commission of the arson, operating alone or concurrently with Gregory's alleged failure to hydrate, the injury would not have occurred. *Id.* Additionally, even were we to conclude that Gregory failed to hydrate and that this failure was clearly sufficient to produce the injury,[5] the commission of the arson was not clearly insufficient. Thus, the exception does not apply. *Id.* Therefore, we conclude that appellants, who committed the arson, are criminally responsible for causing Gregory's bodily injury and that by reason of or because of appellants' commission of an arson, Gregory's physical condition was impaired.

Furthermore, viewing all the evidence in the light favorable to the prosecution, we conclude that a rational jury could have found a causal connection between Gregory's

---

[5]At trial, the jury also heard the following evidence which appellants contend is contrary to the verdict: Gregory began sweating very soon after arriving and donning his bunker gear; firefighters have access to water every time they exit the fire zone; as a paramedic, Gregory knew the warning signs of dehydration; Gregory admitted that he was responsible for his own hydration levels; Gregory agreed that he was not sufficiently replenishing fluids; Dr. Arrellano testified that the body sends signals when it is becoming dehydrated and if a person heeds those signals and properly rests and re-hydrates than the effects of dehydration can be avoided; Dr. Arrellano also testified that Gregory's dehydration was a failure to replenish fluids properly; Gregory did not drink any water between the completion of his exterior assignment and his entry into the building the second time; a firefighter can remove himself from the fire zone to re-hydrate; and Gregory testified that he felt thirsty inside the building but decided to "stick it out" because he knew they would be exiting soon.

9

dehydration and the fire beyond a reasonable doubt. *See Jackson*, 443 U.S. at 318-19; *Coleman*, 131 S.W.3d at 307. The jury could have rationally concluded that appellants caused an impairment of Gregory's physical condition as a result of the arson. *See* TEX. PENAL CODE ANN. §§ 1.07(a)(8); 28.02(d). Thus, we conclude that the evidence is legally sufficient to establish causation. *See Jackson*, 443 U.S. at 319.

Moreover, considering all of the evidence, we cannot conclude that the evidence establishing that appellants' commission of arson caused Gregory's bodily injury is so obviously weak as to undermine confidence in the fact-finder's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Berry*, 233 S.W.3d at 854; *Coleman*, 131 S.W.3d at 307; *see* TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979) (stating that the jury is the sole judge of the facts, the credibility of the witnesses, and the weight given to testimony). Neither can we conclude that a manifest injustice occurred based on the jury's determination. *See Coleman*, 131 S.W.3d at 307 (citing *Johnson*, 23 S.W.3d at 10-12). Thus, the evidence is also factually sufficient to establish causation.

Having concluded that the evidence is legally and factually sufficient to support the jury's finding that Gregory suffered physical impairment and that the commission of the arson caused Gregory's injury, we overrule appellants' first issue.

## II. JOINDER

By their second issue, appellants contend that the trial court abused its discretion in granting the State's motion to join their respective cases. Appellants assert that each of them recorded videotaped statements blaming the other for starting the fire, thus presenting antagonistic and damaging testimony that would prejudice the jury.

Pursuant to article 36.09 of the code of criminal procedure, the trial court has discretion to try two or more defendants jointly if they were jointly or separately indicted for the same offense or for any offense growing out of the same transaction.[6]  TEX. CODE CRIM. PROC. ANN. art. 36.09 (Vernon 2007).  However, if it is made known to the trial court that, among other things, a joint trial would clearly prejudice either defendant, then upon timely motion the trial court shall order a severance as to the defendant whose joint trial could prejudice the other defendant.  *Id.*  To preserve a complaint that the trial court abused its discretion in failing to order a severance, a defendant must make a timely motion to sever and introduce evidence thereon.  *Id.*; *see Peterson v. State*, 961 S.W.2d 308, 310 (Tex. App.–Houston [1st Dist.] 1997, pet. ref'd) (providing that absent evidence supporting a ground for severance, severance is not a matter of right but rests within the trial court's sound discretion); *Gibbons v. State*, 794 S.W.2d 887, 891 (Tex. App.–Tyler 1990, no pet.) (concluding that "evidence that the degree of guilt would be different among the defendants does not establish that degree of prejudice which would require reversal").

On September 25, 2007, the trial court granted the State's motion for joinder.  It is undisputed that appellants were indicted for the same offense; thus, in the trial court's discretion the defendants may have been tried jointly.  *See* TEX. CODE CRIM. PROC. ANN.

---

[6]Article 36.09 provides:

> Two or more defendants who are jointly or separately indicted or complained against for the same offense or any offense growing out of the same transaction may be, in the discretion of the court, tried jointly or separately as to one or more defendants; provided that in any event either defendant may testify for the other or on behalf of the state; and provided further, that in cases in which, upon timely motion to sever, and evidence introduced thereon, it is made known to the court that there is a previous admissible conviction against one defendant or that a joint trial would be prejudicial to any defendant, the court shall order a severance as to the defendant whose joint trial would prejudice the other defendant or defendants.

TEX. CODE CRIM. PROC. ANN. art. 36.09 (Vernon 2007).

11

art. 36.09. Nonetheless, at the hearing on the State's joinder motion, appellants' trial counsel argued for severance, not joinder. Counsel argued that appellants would be prejudiced if they were tried jointly; however, no testimony or other evidence was presented supporting the arguments.

On November 1, 2007, M.V. Jr. and C.A.V. each filed a pre-trial motion to sever contending, among other things, that they would be prejudiced by the testimony of the other. However, no hearings were held and again no evidence was introduced in support of the respective motions to sever, although it is undisputed that each appellant knew of the videotaped statement of the other when the statements were given. *See Aguilar v. State*, 26 S.W.3d 901, 906 (Tex. Crim. App. 2000) (en banc) (concluding that—in a case where a motion to sever was held timely when presented during the trial—"the purpose of filing a motion to sever is to alert the trial court to potentially prejudicial evidence and to allow the court an opportunity to rule on the motion *as the prejudicial evidence becomes apparent*"); *Aguilar v. State*, 39 S.W.3d 700, 702 (Tex. App.–Corpus Christi 2001, pet. ref'd). Although each knew of the other's statement, no evidence was introduced to the trial court as to prejudice. We conclude that the court did not abuse its discretion in joining the prosecution of appellants. We overrule the second issue.

### III. MOTION TO SUPPRESS C.A.V.'S STATEMENT

By a third issue, C.A.V. contends that the trial court abused its discretion when it denied his motion to suppress his statement about his involvement in the fire at the elementary school.[7] The trial court's denial of C.A.V.'s motion was based, in part, on its

---

[7]M.V. Jr. also gave a statement to the fire marshals. On appeal, however, M.V. Jr. does not challenge the admission of his statement. Therefore, our motion-to-suppress analysis applies only to C.A.V. *See* TEX. R. APP. P. 47.1.

finding that C.A.V. was not in custody at the time his statement was made. On appeal, C.A.V. asserts that he was in custody and was entitled to be magistrated. *See* TEX. FAM. CODE ANN. § 51.095(a) (Vernon 2008) (providing that "the statement of a child is admissible in evidence in any future proceeding concerning the matter about which the statement was given if" certain procedural requirements are followed including, among others, that (1) a magistrate warn the child of his rights (to have an attorney present, to remain silent, to have an attorney appointed, to terminate the interview), (2) the statement be signed in the presence of a magistrate who is fully convinced that the child is knowingly and voluntarily making the statement and waiving his rights, and (3) the magistrate certify he examined the child outside the presence of law enforcement officers). In response, the State argues that C.A.V.'s motion to suppress was properly denied because no custodial interrogation took place and the statement was admissible. *See id.* § 51.095(b) (Vernon 2008) (explaining that this section does "not preclude the admission of a statement made by the child" in certain instances including when he is not "in a detention facility or other place of confinement," "in the custody of an officer," or "during or after the interrogation of the child by an officer if the child is in the possession of the Department of Protective and Regulatory Services and is suspected to have engaged in conduct that violates a penal law of this state").

A ruling on a motion to suppress in a juvenile case is reviewed using the same standard that applies to such motions in adult criminal cases. *See In re R.J.H.*, 79 S.W.3d 1, 6 (Tex. 2002). A trial court's denial of a motion to suppress is reviewed for an abuse of discretion, *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006), and in the light most favorable to that ruling. *See id.*; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App.

13

2006).   In conducting this review, we use a bifurcated standard, giving almost total deference to the trial court's determination of historical facts while reviewing the trial court's application of the law to the facts de novo.  *Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997) (en banc); *see St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007) (citing *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005)); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000).

The admissibility of a statement given by a juvenile is controlled by section 51.095 of the family code.  *See* TEX. FAM. CODE ANN. § 51.095 (Vernon 2008).   A juvenile's statement is inadmissible against the juvenile in a subsequent trial if it is taken during custodial interrogation without the admonishments required by that section.  *Id.* § 51.095(a).   However, section 51.095 does not preclude the admission of a juvenile's statement if the statement does not stem from custodial interrogation.  *Id.* § 51.095(b).

"'Custodial interrogation' is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Cannon v. State*, 691 S.W.2d 664, 671 (Tex. Crim. App. 1985) (en banc). In determining whether an individual is in custody, a two-step analysis is employed. *Martinez v. State*, 131 S.W.3d 22, 32 (Tex. App.–San Antonio 2003, no pet.).  First, a court examines all the circumstances surrounding the interrogation to determine whether there was a formal arrest or restraint of freedom of movement to the degree associated with a formal arrest.  *Stansbury v. California*, 511 U.S. 318, 322 (1994) (per curiam).  This initial determination focuses on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the individual being questioned. *Id.* at 323; *see Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996)

14

(explaining that the subjective intent of both the police and defendant is irrelevant except to the extent that intent may be manifested in the words or actions of the investigating officials). "[T]he restriction upon freedom of movement must amount to the degree associated with an arrest as opposed to an investigative detention." *Dowthitt*, 931 S.W.2d at 255. Additionally, being the focus of a criminal investigation does not amount to being in custody. *Meek v. State*, 790 S.W.2d 618, 621-22 (Tex. Crim. App. 1990) (en banc). When the circumstances show that the individual acts upon the invitation or request of the police and there are no threats, express or implied, that he will be forcibly taken, then that person is not in custody at that time. *Dancy v. State*, 728 S.W.2d 772, 778 (Tex. Crim. App. 1987) (en banc).

Second, a court considers, in light of the given circumstances, whether a reasonable person would have felt he was at liberty to terminate the interrogation and leave. *Thompson v. Keohane*, 516 U.S. 99, 112 (1995); *see Jeffley v. State*, 38 S.W.3d 847, 855 (Tex. App.–Houston [14th Dist.] 2001, pet. ref'd) (holding that a juvenile is in custody for purposes of determining admissibility of his statement, if, based upon the objective circumstances, a reasonable child of the same age would believe his freedom of movement was significantly restricted). Traditionally, courts consider the following four factors in making this determination: (1) whether probable cause to arrest existed at the time of questioning; (2) the subjective intent of the police; (3) the focus of the investigation; and (4) the subjective belief of the defendant. *Dowthitt*, 931 S.W.2d at 254. However, the subjective intent of both the police and the defendant is irrelevant except to the extent that the intent may be manifested in the words or actions of law enforcement officials. *Martinez*, 131 S.W.3d at 32. The custody determination is based entirely upon objective

15

circumstances. *Id.* When the individual detained is a minor, courts consider his age and all the circumstances surrounding the interrogation to decide whether there was a formal arrest or a restraint of movement to the degree associated with a formal arrest. *In re V.P.*, 55 S.W.3d 25, 31 (Tex. App.–Austin 2001, pet. denied).

Applying the first part of the analysis, we examine all the circumstances surrounding the questioning to determine whether there was a restraint of freedom of movement to the degree associated with a formal arrest. Here, according to Fire Marshal Stuart Sherman, although arson was suspected at the time C.A.V.'s statement was given, investigators were still looking at the determination factors to make sure it was arson. It was on the evening of the fire that C.A.V.'s mother made the request to speak with someone. Fire Marshal Sherman and County Fire Marshal Kyle Young went to a residence where C.A.V.'s mother explained that her sixteen-year-old son might have been involved in the fire. In front of Fire Marshal Sherman, C.A.V.'s mother asked C.A.V. if he was willing to talk with the marshals voluntarily with her present. C.A.V. nodded his head in agreement. C.A.V. also agreed to transport himself, with his mother, in a private vehicle to an interview room at the district attorney's office to make a statement. The interview room had an office-type environment. It had framed artwork on the walls, a table, chairs, and a couch. The door to the room was closed but not locked. Fire Marshals Sherman and Young interviewed C.A.V. During the interview, the marshals wore no badges and carried no guns, ammunition, or handcuffs. No threats or abusive language were employed. Before C.A.V.'s statement was given, the marshals again commented that it was a voluntary statement and that C.A.V. and his mother did not have to be there. Although the district attorney was in the building, he did not participate in the interview, and no other office staff was present. After the statement

16

was given, C.A.V. and his mother left the office. Based on all the circumstances surrounding the questioning and the taking of the statement, we conclude that C.A.V. was not under formal arrest or under a restraint of freedom of movement to the degree associated with a formal arrest.

Turning to the second part of the analysis, we examine whether a reasonable sixteen-year-old in the same situation as C.A.V. would have felt free to terminate the investigation and leave. In making this determination, we evaluate the four traditional factors. First, we recognize that the fire marshals had not completed their investigation into whether the fire was arson; therefore, probable cause to arrest C.A.V. did not exist at the time the statement was given. Second, as to the subjective intent of fire marshals, we note that, throughout their testimony, the marshals reinforced their position that the statements were given voluntarily, often making statements to that effect to both C.A.V. and his mother. They further acknowledged to C.A.V. that he was free to leave. They carried no guns, ammunition, or handcuffs into the interview room, and secured no doors. Thus, nothing in the record indicates either Marshal Sherman or Marshal Young objectively communicated or otherwise manifested an intention to arrest C.A.V. through their words or actions. *See Jeffley*, 38 S.W.3d at 854 ("The subjective intent of law enforcement officials to arrest is irrelevant unless that intent is somehow communicated or otherwise manifested to the suspect."). Third, we recognize that even though C.A.V.'s mother stated that her son might be involved in the fire, C.A.V. was not the focus of the investigation at that time, and he would not have been taken into custody for the arson based on the status of the investigation at that time. Finally, no evidence was presented as to C.A.V.'s subjective beliefs. Our evaluation of the four traditional factors leads us to conclude that

17

a reasonable sixteen-year-old in the same situation as C.A.V. would not have believed his freedom of movement was significantly restricted; rather, he would have felt free to terminate the session and leave.

Therefore, based on the totality of circumstances, we conclude that C.A.V. was not in custody when he gave his videotaped statement to the fire marshals. Because C.A.V. was not in custody when he made his statement, the requirement that he be magistrated did not apply to him. Accordingly, the trial court did not abuse its discretion in denying the motion to suppress. We overrule C.A.V.'s third issue.

## IV. CONCLUSION

We affirm the adjudication and disposition orders of the trial court entered against M.V. Jr., in trial court cause number 1-5089. We also affirm the adjudication and disposition orders of the trial court entered against C.A.V. in trial court cause number 2-5088.

NELDA V. RODRIGUEZ
Justice

Memorandum Opinion delivered and
filed this 1st day of October, 2009.

18