**Affirmed and Memorandum Opinion filed August 20, 2015.**



In The

# Fourteenth Court of Appeals

### NO. 14-14-00178-CR

## TIQUISHIA QURENA CARROLL, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 176th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1374362**

## M E M O R A N D U M   O P I N I O N

Appellant Tiquisha Carroll was convicted of aggravated robbery enhanced by one prior felony conviction for kidnapping. *See* Tex. Penal Code Ann. § 29.03(a)(2) (West 2011). Appellant raises three issues on appeal. In her first issue, appellant contends that she was unconstitutionally deprived of her due process rights because the State delayed disclosure of exculpatory evidence. We hold that appellant did not preserve this complaint for appellate review.

In her second issue, appellant argues the trial court erred in denying her motion for a directed verdict because it improperly admitted evidence of a tainted in-court identification. In her third issue, appellant asserts that the evidence is legally insufficient to establish her identity as the assailant. Both issues challenge the legal sufficiency of the evidence. We hold the evidence is legally sufficient for a rational juror to find beyond a reasonable doubt that appellant committed the offense of aggravated robbery. We affirm the judgment of the trial court.

## BACKGROUND

At approximately 11:00 p.m. on January 17, 2013, Joe Blanco, the complainant, parked his vehicle in the parking lot of an apartment complex. It was dark, but the area was lit. As Blanco started walking toward his apartment, an individual approached Blanco and asked to use his cell phone. When Blanco refused, the individual pulled out a small pistol, thrust it into Blanco's chest, and ordered him to "[d]rop your [expletive], and give me everything . . . ." Blanco immediately emptied his pockets and dropped his keys, cell phone, and sports bag. He then begged the assailant not to shoot him and started to walk away. As Blanco was walking away toward his apartment, Blanco saw the assailant "[s]hoveling stuff into the bag that [he] left . . . [and] by the time [he] turned the corner, [the assailant] was in [Blanco's] car and . . . drove off . . . ."

Blanco ran into his mother's apartment and called 9-1-1. In the call, Blanco alerted the police to the location of his cell phone by using a global positioning system ("GPS") feature. Within one hour of the robbery, appellant Tiquisha Carroll was arrested while driving Blanco's vehicle. The officers searched appellant and found Blanco's cell phone in her pocket. The officers then searched the vehicle and found, in addition to the remaining items taken from Blanco, a small pistol that matched the description of the one used in the robbery.

2

Blanco later arrived on the scene to perform a show-up identification.[1] Blanco observed appellant from a distance of approximately ten feet and quickly identified her as the assailant.

At trial, Blanco testified that he initially described the suspect to the police as a young male about 16 years of age, 5 feet 5 inches tall, and wearing a red hooded sweatshirt or "hoodie." According to Harris County Deputy Russell Rocamontes, however, the description of the suspect Blanco gave him was a female wearing a gray hoodie. Appellant was wearing a gray hoodie at the time of arrest.

Deputy Rocamontes also testified without objection that a new supplement to the offense report was approved three weeks prior to the trial. This supplement contained the results of the latent print analysis reporting that appellant's fingerprints did not appear on the gun. Outside the presence of the jury, the State explained to the court:

> Any offense report that I gave to [appellant] was printed before [the fingerprint reports were approved]. . . . I did not know that there was the fingerprint analysis until I was reviewing the offense report in trial. . . . [I] texted our investigator to see if we can get [a fingerprint examiner] into court tomorrow if [appellant] wants him. . . . [I]f [appellant] wants him we'll do whatever we can to get him here.

Appellant, however, declined to call the fingerprint examiner as a witness and stated, "[a]t this point if it comes to the jury's attention that [appellant's] prints are not on the gun, we don't intend to ask any more questions . . . . [I] don't intend to call [the fingerprint examiner]."

---

[1] A show-up is an identification procedure in which, unlike in a lineup or photo array, only one individual or photo is presented to the witness for possible identification. *See Wilson v. State*, 267 S.W.3d 215, 217 n.1 (Tex. App.—Waco 2008, pet. ref'd); Sarah Anne Mourer, *Reforming Eyewitness Identification Procedures Under the Fourth Amendment*, 3 DUKE J. CONST. L. & PUB. POL'Y 49, 72 n. 137 (2008).

The next day, a jury found appellant guilty of aggravated robbery, and the trial court sentenced her to 25 years in prison. This appeal followed.

ANALYSIS

In her first issue, appellant contends that the State delayed disclosure of exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The remedy available for a *Brady* violation is a new trial. *See Ex Parte Miles*, 359 S.W.3d 647, 664 (Tex. Crim. App. 2012). In her second issue, appellant argues the trial court erred in denying her motion for a directed verdict because it impermissibly admitted an in-court identification into evidence. In her third issue, appellant contends that the evidence is legally insufficient to establish her identity as the assailant. A challenge to the denial of a directed verdict is a challenge to the legal sufficiency of the evidence. *See Gabriel v. State*, 290 S.W.3d 426, 435 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Thus, both appellant's second and third issues challenge the legal sufficiency of the evidence, and we address them together.

A successful challenge to the legal sufficiency of the evidence results in an acquittal, not a new trial. *See Tibbs v. Florida*, 457 U.S. 31, 41–42 (1982). Accordingly, we begin by addressing appellant's second and third issues because they afford the greatest relief. *See* Tex. R. App. P. 43.3; *Campbell v. State*, 125 S.W.3d 1, 4 n.1 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (stating reviewing court should first address complaints that would afford the greatest relief)

I. **The trial court did not err in denying appellant's motion for a directed verdict because there is legally sufficient evidence that appellant committed aggravated robbery.**

A. **Standard of review and applicable law**

We review the legal sufficiency of the evidence by considering all of the

4

evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). A jury is the sole judge of the credibility of witnesses and the weight to afford testimony. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). The jury may reasonably infer facts from the evidence presented, credit the witnesses it chooses, disbelieve any or all of the evidence or testimony proffered, and weigh the evidence as it sees fit. *See Canfield v. State*, 429 S.W.3d 54, 65 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). When the record supports conflicting inferences, we presume the trier of fact resolved the conflicts in favor of the State and defer to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Our duty as a reviewing court is merely to ensure the evidence presented actually supports a conclusion that the defendant committed the crime. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). When examining the sufficiency of the evidence, we consider all of the direct and circumstantial evidence admitted, whether properly or improperly. *See Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001).

A person commits robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, she intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. Tex. Penal Code Ann. § 29.02(a)(2) (West 2011). A person commits theft if she unlawfully appropriates property with intent to deprive the owner of it. Tex. Penal Code Ann. § 31.03(a) (West 2011). Appropriation is unlawful if it is without the owner's effective consent. Tex. Penal Code Ann. § 31.03(b)(1) (West 2011). A person commits aggravated robbery if she uses or exhibits a deadly weapon during the

5

commission of a robbery.  Tex. Penal Code Ann. § 29.03(a)(2) (West 2011).  A firearm is per se a deadly weapon.  Tex. Penal Code Ann. § 1.07(a)(17)(A) (West 2011).

> **B.    The evidence is legally sufficient to establish appellant's identity as the assailant.**

Appellant does not argue the evidence is inadequate to demonstrate the crime of aggravated robbery was committed.  Instead, she contends there is no credible evidence connecting her to the offense.  Specifically, appellant points out that (1) she did not fit the description of the suspect; (2) there was only one eyewitness; (3) there was no fingerprint evidence linking her to the offense; and (4) the cell phone stayed in the same location for about twenty minutes.

Viewing the record in the light most favorable to the verdict, we hold the evidence is legally sufficient for a rational juror to conclude beyond a reasonable doubt that appellant committed the offense of aggravated robbery.  Although complainant Blanco's description of the suspect during his trial testimony was inconsistent with the police report, the jury had an opportunity to assess Blanco's and the other witnesses' credibility and make reasonable inferences from the evidence.  Specifically, Blanco testified that he initially described the suspect to the police as a young male about 16 years of age, 5 feet 5 inches tall, and wearing a red hoodie.  According to Deputy Rocamontes, however, Blanco described the suspect to him as a female wearing a gray hoodie.  Appellant was wearing a gray hoodie at the time of her arrest.  The evidence at trial indicated that the parking lot was not well lit[2] and that the suspect was described as a young teenager wearing a hoodie, possibly gray or red.

---

[2] According to Blanco's testimony, it was dark outside but there were lights around the apartment complex.

6

Blanco also testified that he saw appellant "shoveling stuff into the bag that [he] left, and then by the time [Blanco] turned the corner, [appellant] was in [his] car and . . . drove off . . . ." Blanco identified appellant as the assailant at the show-up and during the subsequent trial. Together with other evidence connecting appellant to the crime (described below), a rational juror could credit Rocamontes's testimony over Blanco's testimony on the gender-description issue. Alternatively, a rational juror crediting Blanco's testimony could infer that, under these circumstances, Blanco mistakenly believed a young male committed the theft during his initial description to police officers, only to realize later that the hooded perpetrator was in fact a young female.

To the extent appellant argues the evidence is insufficient because only the complainant witnessed the offense, it is well established that the testimony of a single eyewitness is sufficient to support a felony conviction for aggravated robbery. *See, e.g., Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971) (upholding conviction for assault where only one witness saw defendant with gun); *Sosa v. State*, 177 S.W.3d 227, 230 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (holding evidence legally sufficient where witness identified defendant based on clothing, build, and height, along with evidence that defendant was present at scene and flight therefrom).

With regard to appellant's argument that the evidence is insufficient because no fingerprint evidence linked her to the crime, we disagree for two reasons. First, fingerprint evidence is not necessary to prove aggravated robbery. Second, a rational jury could have found the elements of the offense beyond a reasonable doubt without fingerprint evidence. Appellant was arrested less than an hour after the robbery. She was driving Blanco's vehicle, which contained the items taken from Blanco at gunpoint and a gun that matched the description of the one used in

the robbery. The unexplained possession of recently stolen property permits an inference that the possessor is guilty of theft. *See Chavez v. State*, 843 S.W.2d 586, 587–88 (Tex. Crim. App. 1992). Appellant did provide an explanation for possessing the stolen cell phone after it was discovered in her pocket, claiming that she found the phone. But the jury, as fact finder, could reasonably have concluded that appellant's explanation was false or unreasonable because appellant was driving the stolen vehicle while carrying a gun that matched the description of the one used in the robbery. *See Montgomery*, 369 S.W.3d at 192; *Clayton*, 235 S.W.3d at 778; *Canfield*, 429 S.W.3d at 65. The falsity of an explanation may be shown by circumstantial evidence. *Adams v. State*, 552 S.W.2d 812, 815 (Tex. Crim. App. 1977); *James v. State*, 48 S.W.3d 482, 486 (Tex. App.—Houston [14th Dist.] 2001, no pet.).

Furthermore, the jury may have disregarded the lack of fingerprint evidence because Deputy Rocamontes did not wear gloves while handling the gun. Given that the jury was the sole judge of the credibility of the witnesses and the weight to be given to the evidence, we defer to the jury's weight and credibility determinations. *See Montgomery*, 369 S.W.3d at 192; *Clayton*, 235 S.W.3d at 778; *see also Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

Appellant also argues that someone else could have given the vehicle to her because the cell phone stayed in the same location for about twenty minutes between the robbery and her arrest. This scenario is a possible inference from the evidence, but it is not the only possible inference. When the record supports conflicting inferences, we presume that the jury resolved the conflicts in a manner supporting its verdict and defer to that determination. *Clayton*, 235 S.W.3d at 778.

8

**C.** **The trial court did not err in denying appellant's motion for a directed verdict.**

In her second issue, appellant argues that the trial court should have granted her motion for a directed verdict because it had improperly admitted the complainant's in-court identification of appellant, which appellant claims was tainted by an impermissibly suggestive pretrial identification procedure. As indicated above, when evaluating the sufficiency of the evidence, we consider all the evidence, whether properly or improperly admitted. *See Conner*, 67 S.W.3d at 197. The question in ruling on a motion for directed verdict, therefore, is not whether an in-court identification was tainted and should have been excluded from evidence. Rather, the question is whether there is sufficient evidence to support a conviction.

We hold the trial court did not err in denying appellant's motion for a directed verdict because, as indicated above, the evidence is legally sufficient for a rational juror to find beyond a reasonable doubt that appellant committed the offense of aggravated robbery. We further hold that a challenge to the denial of a motion for directed verdict is not the appropriate vehicle for challenging the admissibility of evidence. *See Stubblefield v. State*, 477 S.W.2d 566, 567–68 (Tex. Crim. App. 1972) (holding appellant's complaint regarding admission of evidence was untimely and failed to preserve error because appellant first raised complaint in motion for directed verdict after State had rested its case in chief); *Torres v. State*, 424 S.W.3d 245, 255–56 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (holding appellant's Confrontation Clause complaint was untimely and failed to preserve error because appellant first voiced complaint in motion for directed verdict after the State had rested its case in chief).

To the extent appellant's second issue challenges the admission of evidence,

9

appellant failed to preserve her claim that the in-court identification was tainted by an impermissibly suggestive pretrial identification. *See Perry v. State*, 703 S.W.2d 668, 670–71 (Tex. Crim. App. 1986) (holding defendant waived complaint by failing to object at trial to pretrial identification procedure or in-court identification); *In re G.A.T.*, 16 S.W.3d 818, 827 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (holding that failure to object to pretrial identification procedure or in-court identification waived any error); *see also Stubblefield*, 477 S.W.2d at 567–68. Although appellant filed a pretrial motion to suppress evidence relating to "[a]ny and all tangible evidence . . . in connection with . . . arrest of [appellant] . . . and any testimony by any law enforcement officers or others concerning such evidence," the record contains no ruling or refusal to rule on the motion.[3] If the trial court does not rule or refuses to rule on a pretrial motion to suppress, an appellant must object to the evidence at trial and obtain an adverse ruling on the record to preserve any error for our review. *See* Tex. R. App. P. 33.1(a); *Calloway v. State*, 743 S.W.2d 645, 649–50 (Tex. Crim. App. 1988). The record reflects no objection either when testimony was given regarding the out-of-court identification or when the complainant identified appellant as the assailant in court. Appellant therefore failed to preserve her right to complain on appeal about the admission of the identification evidence. *See Calloway*, 743 S.W.2d at 649–50; *Perry*, 703 S.W.2d at 670–71; *In re G.A.T.*, 16 S.W.3d at 827; *see also Stubblefield*, 477 S.W.2d at 567–68.

For these reasons, we hold that the trial court did not err in denying appellant's motion for a directed verdict because a reasonable jury could find beyond a reasonable doubt that appellant committed the offense of aggravated robbery. We overrule appellant's second and third issues.

---

[3] We express no opinion on whether the identification evidence in this case qualifies as testimony concerning tangible evidence.

**II.      Appellant did not preserve her *Brady* complaint for appellate review.**

In her first issue, appellant asserts that she was unconstitutionally deprived of her due process rights because the State delayed disclosure of the exculpatory fingerprint testing results.  A *Brady* violation occurs when the State suppresses, willfully or inadvertently, material evidence favorable to a defendant.  *See Brady*, 373 U.S. at 87; *Harm v. State*, 183 S.W.3d 403, 406 (Tex. Crim. App. 2006).  To demonstrate reversible error under *Brady*, an appellant must show (1) the State suppressed evidence, regardless of the prosecution's good or bad faith; (2) the suppressed evidence is favorable to appellant; and (3) the evidence is material, that is, there is a reasonable probability that, had the evidence been disclosed, the outcome of the trial would have been different.  *See United States v. Bagley*, 473 U.S. 667, 682–83 (1985); *Ex parte Kimes*, 872 S.W.2d 700, 702 (Tex. Crim. App. 1993).

A *Brady* complaint must be made as soon as its grounds become apparent or should be apparent.  *See Wilson v. State*, 7 S.W.3d 136, 146 (Tex. Crim. App. 1999); *see also* Tex. R. App. P. 33.1(a)(1).  To preserve a *Brady* complaint for appellate review, the record must show that an appellant objected to the *Brady* violation and obtained a ruling (or a refusal to rule) on the objection from the trial court.  *See Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011).

When exculpatory evidence is not concealed but disclosure is untimely, as in this case, an appellant bears the burden to show that the delay resulted in prejudice.  *See Wilson*, 7 S.W.3d at 146.  To show prejudice, the appellant must show that the evidence is material.  *See Little v. State*, 991 S.W.2d 864, 866 (Tex. Crim. App. 1999).  Prejudice is not shown where the information is disclosed in time for the accused to make effective use of it at trial.  *Id*.  When the appellant fails to request a continuance, she waives any error resulting from the State's failure to disclose

11

evidence in a timely manner. *See Lindley v. State*, 635 S.W.2d 541, 544 (Tex. Crim. App. 1982).

In this case, appellant contends that the disclosure of the fingerprint evidence came at a time when she was no longer able to make effective use of it at trial. During the State's case in chief, Deputy Rocamontes testified without objection that a new supplement to the offense report was approved three weeks prior to trial, and that it showed appellant's fingerprints did not appear on the gun. Outside the presence of the jury, the prosecutor, defense counsel, and the trial court then engaged in the following discussion:

> PROSECUTOR: [A]s I was trying to demonstrate through the last witness [Deputy Rocamontes], there's a supplement [to] the fingerprint report that was approved on January 29, 2014 [three weeks prior to trial].[4]
>
> THE COURT: Okay.
>
> PROSECUTOR: Any offense report that I gave to the Defense was printed before then. I printed out clean copies of the offense report Friday, put them in my file, and did not review them until today. I did not know that there was the fingerprint analysis until I was reviewing the offense report in trial.
>
> THE COURT: Okay.
>
> PROSECUTOR: I realize that this is exculpatory because it shows that the defendant's prints were not on the gun. [O]nce I realized that, I gave a copy of the report . . . to [the] Defense. I have not subpoenaed or noticed the fingerprint analyst who did this examination. [I] texted our investigator to see if we can get him into court tomorrow if the Defense wants him. [I] don't need to call him, but if Defense wants him we'll do whatever we can to get him here.
>
> DEFENSE COUNSEL: Judge, just to be clear too, before the first trial

---

[4] The supplement was approved on January 29, 2014. The trial commenced on February 17, 2014.

12

setting, January 21st . . . [I] communicated with [Prosecutor] . . . . At that point she confirmed that I had everything that the State had. . . . At this point if it comes to the jury's attention that [appellant's] prints are not on the gun, we don't intend to ask any more questions. . . . [A]t this point, I don't intend to call [the fingerprint examiner] . . . .

THE COURT: Because the information is before the jury that [appellant's fingerprints] were not on the gun.

DEFENSE COUNSEL: Correct.

THE COURT: All right. Anything further?

PROSECUTOR: That's all. That's all.

THE COURT: See you folks tomorrow at 9:30.

The next morning, appellant cross-examined Deputy Rocamontes. Appellant did not elicit any further testimony regarding the fingerprint evidence.

A review of the record demonstrates that appellant did not object, request a continuance, or otherwise suggest that the delayed disclosure of the fingerprint analysis would negatively affect her in any way. When an appellant does not request a continuance, she waives any error resulting from the State's failure to make a timely disclosure of exculpatory evidence. *See Lindley*, 635 S.W.2d at 544 (holding failure to request postponement or seek continuance waives any error urged on appeal on the basis of surprise).

Furthermore, even if we assumed that appellant properly preserved her *Brady* claim, appellant was not prejudiced because the evidence was disclosed early enough for appellant to make use of it at trial. *See Little*, 991 S.W.2d at 865–67 (holding State's failure to inform defendant of fact that expert had lost graphical paperwork from defendant's blood alcohol test until after expert testified, but before defendant cross-examined expert, did not constitute *Brady* violation because

13

defendant received information in time to put it to effective use at trial).[5]  The State introduced into evidence without objection the fingerprint analysis reporting that appellant's fingerprints did not appear on the gun.  Appellant had the opportunity to highlight the evidence during cross-examination of Deputy Rocamontes, and appellant had an opportunity to call the fingerprint examiner to testify.  Appellant chose to do neither.  Because appellant received the evidence early enough to make use of it at trial, and because appellant made no request for a continuance, there was no reversible error under *Brady*.  *See* Tex. R. App. P. 33.1(a)(1); *Wilson*, 7 S.W.3d at 146; *Lindley,* 635 S.W.2d at 544.  We therefore overrule appellant's first issue.

### CONCLUSION

Having overruled appellant's three issues, we affirm the trial court's judgment.


/s/        J. Brett Busby
              Justice


Panel consists of Chief Justice Frost and Justices Jamison and Busby.
Do not publish — TEX. R. APP. P. 47.2(b).

---

[5] *See also Palmer v. State*, 902 S.W.2d 561, 565 (Tex. App.—Houston [1st Dist.] 1995, no pet.) (holding State's disclosure of impeachment evidence during its presentation of evidence did not violate *Brady* rule because appellant received information in time to present it to the jury); *Givens v. State*, 749 S.W.2d 954, 957 (Tex. App.—Fort Worth 1988, pet. ref'd) ("[A]ppellant discovered the statement early enough to make use of it at trial; it was introduced into evidence and read in presence of the jury.").